Jerry HAMMONS, Plaintiff–Appellant,

v.

NORFOLK SOUTHERN CORPORATION, et al., Defendants–Appellees.

No. 97–3465.

United States Court of Appeals, Sixth Circuit.

Argued June 19, 1998.

Decided Oct. 2, 1998.

David G. Torchia (argued and briefed), Tobias, Kraus & Torchia, Cincinnati, OH, for Plaintiff–Appellant.

Robert A. Dimling (briefed), Frost & Jacobs, Cincinnati, OH, Jeffrey S. Berlin (briefed), Mark E. Martin (argued and briefed), Sidley & Austin, Washington, DC, for Defendants–Appellees.

Before: MOORE, CLAY and GILMAN, Circuit Judges.

## OPINION

CLAY, Circuit Judge.

Appellant, Jerry Hammons, appeals from the district court's order granting the motion of Appellees, Norfolk Southern Corporation, et al. ("Norfolk"), to dismiss Count I of his Second Amended Complaint, which asserts a *Bivens*[1] claim against Norfolk, and denying Hammons' motion to amend the complaint. For the reasons set forth below, we **REVERSE** the order of the district court and **REMAND** for proceedings consistent with this opinion.

### I.

Hammons was employed by Cincinnati, New Orleans, and Texas Pacific Railway Company ("CNT")[2]. On June 15, 1990, Hammons was subjected to a random urine drug screen pursuant to Norfolk's company policy and the Federal Railroad Administration's Control of Alcohol and Drug Use Regulations ("FRA Regulations"), 49 C.F.R. §§ 219 *et seq.*[3] He tested positive for marijuana and was suspended from service. A new urine sample was provided by Hammons, which tested negative for drugs. Because the results of the second drug screen were negative, J.P. Salb, M.D., Norfolk's Director of Medical Services, notified Hammons, in a letter dated July 30, 1990, that he would be returned to service. However, the letter also warned Hammons that "[s]hould any future test be positive, you will be subject to dismissal." (J.A. at 88.) Thereafter, Hammons was allegedly subjected to approximately twenty-four random drug screens during the next year and a half. (*Id.* at 21.)

On February 27, 1992, Hammons' urine sample tested positive for cocaine. Consequently, on April 14, 1992, Hammons was discharged from service for failure to comply with company policy and the terms of the July 30, 1990 letter. As permitted by the collective bargaining agreement ("CBA"),

1. *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens*, despite the absence of a Congressional statute authorizing a federal cause of action, the Supreme Court held that damages may be recovered from federal agents for injuries inflicted by them in violation of victim's Fourth Amendment rights. *Id* at 392–97, 91 S.Ct. 1999. *See* discussion *infra* Part II.A.

2. CNT is a wholly owned subsidiary of Norfolk Southern Railway Company ("NSR"). NSR's common stock is wholly owned by Norfolk.

3. Norfolk's company policy on drugs provides the following:

 All physical examinations required by the Company include a drug screen urinalysis. An employee whose urine has tested positive for a prohibited substance will not be permitted to perform service until he or she provides to the Company a sample that tests negative. An employee withheld from service by the Medical Director under this policy is not thereby being subjected to discipline. However, failure by the employee timely to provide a urine sample

 that tests negative may result in dismissal, as indicated below.

 An employee whose urine tests positive will be instructed in writing to rid his or her system of the involved substance and provide a negative urine sample, at a medical facility to which he or she is referred by the Company, within 45 days of the date of the letter giving the instructions. If the employee fails to provide a negative urine sample within that 45–day period, he or she will be subject to dismissal for failing to obey instructions....

 If the employee provides a negative urine sample within the applicable time limits specified above, he or she will be returned to service. The employee will be instructed in writing that the use of prohibited drugs is contrary to Company policy and that he or she must keep his or her system free of such drugs. An employee who is returned to service in this manner may be required by the Medical Department during a 3–year period following the date of his or her return to service to report to a medical facility for further testing to determine whether he or she is using drugs. If a further test is positive, the employee will be subject to dismissal for failing to obey instructions and Company policy.

Hammons, represented by the United Transportation Union ("Union"), appealed his dismissal within the company. The appeal was denied, by letter dated May 11, 1992. In that letter, Norfolk stated that as a result of the hearing held on April 9, 1992, to determine the facts surrounding Hammons' alleged failure to comply with company policy, "substantial evidence clearly proved the claimant was guilty as charged. The discipline applied was fully warranted and this claim is declined in its entirety." (J.A. at 97.)

In accordance with the CBA, Hammons then appealed the matter to Public Law Board No. 959 ("the Board"), which upheld the discharge based on its finding that Hammons did not proffer any evidence to disprove the laboratory results or show them to be flawed. The underlying action was then initiated as a result of the Board's decision.

Count I of Hammons' original complaint asserted a claim against Norfolk under 42 U.S.C. § 1983. Hammons alleged that by testing him for drugs in violation of 49 C.F.R. § 216.601, Norfolk violated his right under the Fourth Amendment to be free of unreasonable searches and seizures.[4] Norfolk moved to dismiss Count I on the ground that Hammons had not alleged that Norfolk acted under color of state law. In response, Hammons moved to file a second amended

complaint in order to assert a *Bivens* claim against Norfolk instead of the § 1983 claim.[5] Norfolk opposed the motion, contending that a *Bivens* action cannot be maintained against a private entity. In support of its argument, Norfolk relied upon *Kauffman v. Anglo-American School of Sofia*, 28 F.3d 1223 (D.C.Cir.1994). *Kauffman* held that a *Bivens* action cannot be brought against private entities engaging in federal action. In turn, Hammons argued that the District of Columbia Circuit's holding in *Kauffman* is contrary to the Sixth Circuit's holding in *Yiamouyiannis v. Chemical Abstracts Service*, 521 F.2d 1392 (6th Cir.1975) which, according to Hammons, permitted a *Bivens* claim against a private corporation.[6]

The lower court granted Hammons' motion to file a Second Amended Complaint. Count I of Hammons' complaint asserted a *Bivens* claim against Norfolk alone. Hammons again alleged that by testing him for drugs in violation of 49 C.F.R. § 216.601, Norfolk violated his Fourth Amendment right to be free of unreasonable searches and seizures.

Norfolk moved to dismiss Count I pursuant to Fed.R.Civ.P. 12(b)(6), again asserting that a *Bivens* action cannot be brought against a private corporation. Hammons opposed the motion and stated, in the alternative, that if the court accepted Norfolk's argument, he should be allowed to amend the

(J.A. at 105.)

4. The lower court's disposition of Counts II and III are not the subject of this appeal. Count II was a negligence claim against the laboratory that analyzed Hammons' urine, and was settled out of court. All defendants were granted summary judgment on Count III, which challenged the Board's February 23, 1993 decision.

5. Hammons' First Amended Complaint was filed for the purpose of naming additional defendants.

6. On appeal Hammons again asserts that this court in *Yiamouyiannis* permitted a *Bivens* claim against a private corporation. Hammons' reliance on *Yiamouyiannis*, however, is misplaced. In *Yiamouyiannis*, the plaintiff brought suit against several private defendants including his employer, a private entity. 521 F.2d at 1393. The plaintiff alleged that the defendants violated his First Amendment rights by coercing him to resign from employment, which he asserted constituted a "discharge". *Id.* The plaintiff contended that his employer was "federally funded to the

extent that his discharge must be regarded as governmental action." *Id.* In the alternative, the plaintiff claimed that the Department of Health, Education and Welfare exerted financial pressure upon his employer to silence him. *Id.* The district court granted the defendants' motion for summary judgment on the ground that the plaintiff had not alleged sufficient government action to support a First Amendment claim. *Id.* This court held that summary judgment was inappropriate because there were "continuing questions of fact." *Id.* This court assumed, without deciding, that a *Bivens* claim could be maintained in the underlying action. *Id.* However, the specific issue of whether a private entity could be sued under *Bivens* was not addressed. Accordingly, since "this Court has never expressly dealt with that issue", it cannot now be said that *Yiamouyiannis* is binding authority. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63 & n. 4, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Therefore, we hold that this particular issue, whether a *Bivens* action can be brought against a private corporation, is one of first impression for this Circuit.

complaint to name individual defendants. Hammons also stated that he was "not able to currently identify with any specificity the individual(s) ... responsible for the violation of his constitutional rights" and, therefore, he would need more discovery. (J.A. at 192–93.)

On March 12, 1996, the magistrate judge issued a report which recommended that Norfolk's motion to dismiss Count I be granted, and that Hammons' motion to amend the complaint to name individual defendants be denied. The district court adopted the magistrate judge's report and recommendation by entry of order dated April 24, 1996. Hammons now appeals.

## II.

■■■ We review dismissals brought pursuant to Fed.R.Civ.P. 12(b)(6) de novo. *Merriweather v. City of Memphis,* 107 F.3d 396, 398 (6th Cir.1997). A complaint may be dismissed under 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Moreover, in determining whether dismissal is appropriate, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## III.

### A. *Bivens* Actions

■■■ *Bivens* actions are a creation of federal judicial law. Their roots can be found in the opinion *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens,* a complaint was filed against agents of the Federal Bureau of Narcotics alleging that while acting under the color of federal authority, the agents conducted a warrantless search of the petitioner's apartment, and arrested him without probable cause in violation of the petitioner's Fourth Amendment rights. *Id.* at 389–90, 91

S.Ct. 1999. The *Bivens* Court ultimately held that the petitioner could recover damages from the federal agents for the injuries that they allegedly inflicted in violation of the petitioner's Fourth Amendment rights. *Id.* at 392–97, 91 S.Ct. 1999. However, this remedy may be defeated when "special factors counselling hesitation" exist, or "Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective." *Carlson v. Green,* 446 U.S. 14, 18–19, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

*Bivens* authorized damages have since been extended by the Supreme Court to Fifth and Eighth Amendment violations. *See Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (holding that "[a] cause of action and damages remedy can be implied directly under the Constitution when the Due Process Clause of the Fifth Amendment is violated"); *Carlson,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (holding that *Bivens* remedy was available to the respondent, who alleged that federal prison officials violated his Eighth Amendment rights, even though the allegations could also support a suit under the Federal Tort Claims Act).

■■■ It is clear that in order to maintain a claim under *Bivens,* there must be a showing of "federal" governmental action as opposed to "state" governmental action. *See Bivens,* 403 U.S. at 392, 91 S.Ct. 1999. The doctrine encompassing both terms, however, is commonly referred to as "state action". *See Dobyns v. E–Systems, Inc.,* 667 F.2d 1219, 1220 n. 1 (5th Cir.1982) "As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments.'" *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (*quoting Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 156, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)).[7]

7. In defining the meaning of state action, the Supreme Court in *Lugar* set forth a two-part test. 457 U.S. at 937, 102 S.Ct. 2744. First, the deprivation must be caused by the exercise of

some right or privilege created by the government or by a person to whom the government is responsible. *Id.* "Second, the party charged

It should be noted that the issue of whether Norfolk engaged in state action significant enough for Hammons to maintain a *Bivens* claim is not for us to decide at this juncture, but for purposes of this appeal we will assume that sufficient state action has been alleged.[8]

## B. Liability of Private Corporations Under *Bivens*

### 1. The *Meyer* Decision

Hammons argues that the lower court erred when it held that Norfolk, a private corporation, could not be sued under *Bivens*. Specifically, Hammons asserts that the lower court's reliance on *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), was misplaced inasmuch as that decision did not address the specific issue of whether a *Bivens* action can be maintained against a private corporation. We agree.

In *Meyer*, the Supreme Court held that a *Bivens* action cannot be brought against a federal agency. 510 U.S. at 486, 114 S.Ct. 996. The Court based its holding primarily on its belief that a damages remedy against federal agencies would undermine the purpose of *Bivens*—deterring the individual wrongdoer. *Id.* at 485, 114 S.Ct. 996. The Court noted that "the deterrent effects of the *Bivens* remedy would be lost" if the employing federal agency were held liable for damages. *Id.* It concluded that to allow such a remedy would permit claimants to bypass qualified immunity; and thus, if given a choice, claimants would sue the agency itself instead of a potentially-immune employee.

*Id.* The Court also determined that there are "special factors counselling hesitation" in the creation of a damages remedy against federal agencies, noting that if such a remedy were allowed, it would create a potentially enormous financial burden for the Government, which is a matter affecting fiscal policy that is better left to Congress. *Id.* at 486, 114 S.Ct. 996.

We hold that *Meyer* is not dispositive of the issue at hand. Nothing in *Meyer* prohibits a *Bivens* claim against a private corporation that engages in federal action. Moreover, the reasons given by the Supreme Court for barring a *Bivens* claim against a federal agency do not apply to private corporations.

While the Court in *Meyer* focused on the deterrence goal, this clearly is not the only goal underlying a *Bivens* claim. In allowing a plaintiff to recover damages for injuries inflicted by federal agents in violation of the plaintiff's Fourth Amendment rights, the *Bivens* Court took a range of policy considerations into account. It seemed to focus, however, on the history of the federal courts and their role in protecting rights under the Constitution. It noted that " 'where federally protected rights have been invaded, it has been the role from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.' " *Bivens*, 403 U.S. at 392, 91 S.Ct. 1999 (quoting *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). The Court also noted that "[h]istorically, damages have been regarded as the ordinary remedy for an invasion of personal interest in liberty." *Id.* at 395, 91

---

with the deprivation must be a person who may fairly be said to be a state actor." *Id.*

The Supreme Court has also consistently held that a party's joint participation with state officials in an unlawful action was enough to constitute "state action" under § 1983. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In *Adickes*, the Court noted the following:

'Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.'

398 U.S. at 152, 90 S.Ct. 1598 (quoting *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)). *Cf. West v. Atkins*, 487 U.S. 42, 50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (finding that a "public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law"); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164–66, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (holding that private parties' use of New York statute without more was not state action absent allegation of the participation of any public officials).

8. For purposes of remand, we emphasize that we pass no judgment as to whether federal action is involved in the instant case.

S.Ct. 1999. Furthermore, the Court recognized that " '[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.' " *Id.* at 397, 91 S.Ct. 1999 (quoting *Marbury v. Madison,* 1 Cranch 137, 163, 2 L.Ed. 60 (1803)).

 As such, we believe that the primary goal of *Bivens* was to provide a remedy for victims of constitutional violations by federal agents where no other remedy exists, regardless of whether the official would be deterred in the future from engaging in such conduct. As Justice Harlan noted:

In resolving [the] question [at hand], it seems to me that the range of policy considerations we may take into account is at least as broad as the range of a legislature would consider with respect to an express statutory authorization of a traditional remedy. In this regard I agree with the Court that the appropriateness of according Bivens compensatory relief does not turn simply on the deterrent effect liability will have on federal official conduct. *Damages as a traditional form of compensation for invasion of a legally protected interest may be entirely appropriate even if no substantial deterrent effects on future official lawlessness might be thought to result.* Bivens, after all, has invoked judicial processes claiming entitlement to compensation for injuries resulting from allegedly lawless official behavior, if those injuries are properly compensable in money damages. *I do not think a court of law—vested with the power to accord a remedy—should deny him his relief simply because he cannot show that future lawless conduct will thereby be deterred.*

*Bivens,* 403 U.S. at 407–08, 91 S.Ct. 1999 (Harlan, J., concurring) (emphasis added). We agree and, while recognizing the importance of deterring the individual wrongdoer, believe that the importance of remedying constitutional violations far exceeds any deterrence goal—victims are entitled to relief regardless of whether future lawless conduct is deterred.[9]

Finally, *Meyer's* second basis for barring a *Bivens* action against a federal agency, the potentially enormous financial burden on the Government, is not applicable to the case at hand. Allowing a *Bivens* claim against a private corporation does not implicate "federal fiscal policy," where, as here, the federal purse is not involved. *See generally United States v. Standard Oil Co. of Cal.,* 332 U.S. 301, 311, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947).

Based on the aforementioned analysis, *Meyer* is not dispositive of the issue at hand; and thus, the district court's reliance on that case is misplaced.[10]

**9.** It should also be noted that the concern the Court had regarding qualified immunity and its effect on deterring individual officers is not a concern in the context of private corporations inasmuch as private corporations are not public officials; and thus, not entitled to qualified immunity. *See Vector Research, Inc. v. Howard & Howard Attorneys, P.C.,* 76 F.3d 692, 698 (6th Cir.1996) (holding that "a party not a public official may be liable under *Bivens,* but not entitled to qualified immunity because the reason for affording qualified immunity to a public official does not apply to a government actor who is not a public official").

**10.** Accordingly, the district court's reliance on *Kauffman* is similarly misplaced. In *Kauffman,* the court extended *Meyer* to the private sector and held that a *Bivens* action cannot be brought against private entities engaging in federal action. *Kauffman,* 28 F.3d at 1228. It seems that the *Kauffman* court interpreted *Meyer* to stand for the proposition that deterrence is the primary goal underlying a *Bivens* action. In support of its holding, the *Kauffman* court stated the following:

[T]he premise of Meyer is that individual agents are not deterred by the threat of suit against their employers.... [P]rovision of a damages remedy against a private entity would actively diminish the deterrent value of the remedy against the individual.... If such additional defendants were available (often with deeper pockets than the individual offenders), plaintiffs might make the same choice as the Kauffmans, who brought their Bivens actions only against the private entity and not against the individual [alleged wrongdoers]. Even if plaintiffs sued both entity and individuals, they would likely focus collection efforts against the entity, with effects only partly blunted by the entity's rights to contribution. To the extent that plaintiffs make such choices with any regularity, Meyer indicates that the deterrent effect of the Bivens remedy would be weakened.

*Id.* at 1227. As we previously stated, we believe that the primary focus of *Bivens* is to provide a remedy for victims of constitutional violations. Although deterrence is an important policy consideration, victims of lawless conduct should be remedied regardless of whether future constitutional violations are deterred.

## 2. *Bivens* Claims and 42 U.S.C. § 1983

Generally, the standards of liability in *Bivens* actions are similar to the standards under § 1983. Both the Supreme Court and this Court have noted that actions brought under § 1983 raise identical concerns as those raised in *Bivens* actions. *See Butz v. Economou*, 438 U.S. 478, 500, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (noting that "[t]he constitutional injuries made actionable by § 1983 are of no greater magnitude than those for which federal officials may be responsible [under *Bivens* ]"). The *Butz* Court ultimately held that immunity of federal officials from *Bivens* actions is coextensive with immunity of state officials from § 1983 actions. *Id.; accord Vector*, 76 F.3d at 698–99 (noting that "[*Bivens* ] claims are the counterpart to suits under 42 U.S.C. § 1983 against state officials who infringe plaintiffs' federal constitutional or statutory rights").

In *Vector*, we held that private actors who cause constitutional injuries can be held liable for damages under *Bivens,* if their conduct is so related to the federal government that they can be deemed federal agents or actors. 76 F.3d at 698–99. However, we also held that a private actor found liable under *Bivens,* unlike a public official, would not be entitled to qualified immunity. *Id.* As noted in the opinion, our holding was an extension of the reasoning found in *Wyatt v. Cole*, 504 U.S. 158, 159, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992). In *Wyatt*, the Supreme Court held that private defendants charged with liability under § 1983 are not entitled to qualified immunity, noting that the reasons for affording qualified immunity to government officials are not transferable to private parties. *Id.* at 168, 112 S.Ct. 1827. Recognizing that *Bivens* claims are analogous to § 1983 actions, the *Vector* Court similarly held that, in the context of a *Bivens* action, private parties are not entitled to qualified immunity. *Vector,* 76 F.3d at 698.

Actions brought under *Bivens* and § 1983 are both designed to redress constitutional violations. In order to recover under § 1983 the plaintiff must show that the defendant deprived him of a right secured by the Constitution and laws of the United States, and that the deprivation was under color of state law. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). However, as noted, *Bivens* actions are based upon federal governmental action. Thus, the primary difference between *Bivens* and § 1983 is that the former pertains to federal action and the latter to state action. Both actions, however, raise similar concerns.

It is undisputed that corporations engaging in state action can be sued under § 1983. *See Lugar*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482; *Adickes*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142; *Fowler v. Nicholas*, 522 F.Supp. 655 (E.D.Pa.1981); *Croy v. Skinner*, 410 F.Supp. 117 (N.D.Ga.1976). In *Lugar*, the petitioner brought suit under § 1983 against his corporate creditor, Edmondson Oil Co., Inc. and its president ("the respondents"). *Lugar,* 457 U.S. at 924, 102 S.Ct. 2744. The petitioner alleged that, in attaching his property, the respondents had acted jointly with the state to deprive him of his property without due process of law. *Id.* at 925, 102 S.Ct. 2744. Apparently, the Virginia statute in question allowed attachment of property upon the allegation by the creditor, in an ex parte petition when it believed that the debtor was disposing of or might dispose of its property in order to defeat his creditors. The Court ultimately held that the petitioner presented a valid cause of action under § 1983 because he challenged the state statute as being procedurally defective under the Due process Clause. *Id.* at 942, 102 S.Ct. 2744. The Court noted that because the petitioner was deprived of his property pursuant to the state statute, the "respondents were, therefore, acting under color of state law in participating in that deprivation." *Id.* As such, the respondents were "state actors" for purposes of the Fourteenth Amendment. *Id.* at 941, 102 S.Ct. 2744.

Similarly in *Adickes*, the petitioner brought suit under § 1983 against S.H. Kress & Co. ("Kress") for an alleged violation of her constitutional rights under the Equal Protection Clause of the Fourteenth Amendment. 398 U.S. at 146, 90 S.Ct. 1598. The petitioner alleged in her complaint that Kress' refusal to serve her lunch in its res-

taurant because she was a "Caucasian in the company of Negroes" was a violation of her right under the Equal Protection Clause not to be discriminated against on the basis of race. *Id.* at 147, 90 S.Ct. 1598. As to this claim, the Court held the following:

> For state action purposes it makes no difference ... whether the racially discriminatory act by the private party is compelled by a statutory provision or by a custom having the force of law—in either case it is the State that has commanded the result by its law. Without deciding whether less substantial involvement of a State might satisfy the state action requirement of the Fourteenth Amendment, we conclude that petitioner would show an abridgement of her equal protection right, if she proves that Kress refused her service because of a state-enforced custom of segregating the races in public restaurants.

*Id.* at 171, 90 S.Ct. 1598.

 Like the *Lugar* and *Adickes* Courts, this Court is primarily concerned with remedying constitutional deprivations. Accordingly, we find no valid reason to treat corporations that engage in federal action differently than corporations engaging in state action, particularly where, as here, the litigation involves a matter of corporate policy. If it can be shown that the corporate policy at issue has violated Hammons' constitutional rights under the Fourth Amendment, and that the policy is attributable to the federal government, Hammons is entitled to relief. Thus, we join the Courts of Appeals for the First, Fifth and Ninth Circuits and hold that a *Bivens* claim can be brought against a private corporation that engages in federal action. *See Mathis v. Pacific Gas & Elec. Co.*, 891 F.2d 1429 (9th Cir.1989), *rev'd on other grounds*, 75 F.3d 498 (9th Cir.1996) (holding that the district court improperly dismissed *Bivens* claim against Pacific Gas and Electric Company ("PG & E"), a public utility, where the employee, who filed

the *Bivens* action after being denied access by PG & E because he was suspected of illegal drug use or sales, may be able to establish that PG & E's action can be ascribed to the government); *Gerena v. Puerto Rico Legal Serv., Inc.*, 697 F.2d 447 (1st Cir.1983) (finding that the *Bivens* claim was properly allowed against a private entity, a legal assistance corporation; however the claim, failed because attorney presented no evidence that his discharge from the corporation was attributable to the federal government); *Dobyns v. E–Systems, Inc.*, 667 F.2d 1219 (5th Cir.1982) (holding that employees' *Bivens* action against their employer, a private corporation, was improperly dismissed by the district court on summary judgment when, under the facts of the case, the corporation engaged in federal action).[11]

## IV.

For the foregoing reasons we **REVERSE** and **REMAND** for further proceedings consistent with this opinion.

---

11. Hammons also argues, in the alternative, that the district court erred by denying his motion to amend his complaint a third time. Hammons requested the district court to allow a third amendment to his complaint so that he could

assert a *Bivens* claim against individuals employed by Norfolk. Because we hold that a *Bivens* action is applicable to a private corporation that engages in federal action, it is not necessary for us to consider this alternative claim.