**Michael OATMAN, Plaintiff–Appellant,**

v.

**John POTTER–Postmaster General, United States Postal Service, Ralph Enguist, Danny Montgomery, Ralph Primo, Ronald Puza, and Mike Winters, Defendants–Appellees.**

No. 01–2363.

United States Court of Appeals, Sixth Circuit.

Jan. 8, 2004.

Peter J. Osetek, Osetek & Associates, Ann Arbor, MI, for Plaintiff–Appellant.

Sheila H. Gaskell, Nancy B. Pridgen, Asst. U.S. Attorney, U.S. Attorney's Office, Detroit, MI, for Defendants–Appellees.

Before NELSON, CLAY and COOK, Circuit Judges.

CLAY, Circuit Judge.

Plaintiff, Michael Oatman, appeals from the order entered by the district court granting summary judgment in favor of Defendants, United States Postal Service ("USPS") and the individual Postal employees named as Defendants, in connection with Plaintiff's cause of action based on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.2000e et seq., and Plaintiff's Bivens action against the individual Defendants alleging a Fifth Amendment violation of Plaintiff's constitutional rights to equal protection and due process.[1] For the reasons set forth below, the district court's order is AFFIRMED.

## BACKGROUND

### Procedural History

On March 15, 2000, Plaintiff, an African–American male, filed the instant action against Defendants, asserting seven causes of action: (1) racial discrimination under Title VII; (2) racial and disability[2] discrimination under the Elliot–Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 et seq. ("ELCRA"); (3) malicious prose-

cution; (4) Bivens claims asserting violations of U.S. Const. amend. V by the individual Defendants; (5) Bivens claims against the USPS alleging due process violations in personnel actions taken against Plaintiff; (6) intentional infliction of emotional distress; and (7) conspiracy to interfere with Plaintiff's civil rights in violation of 42 U.S.C. § 1985(3).

Defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) on June 23, 2000. The court granted the motion in part, dismissing Plaintiff's ELCRA claim because Title VII provides the exclusive remedy for federal employees when alleging employment discrimination based on race,[3] and Plaintiff's due process and equal protection Bivens claims against the USPS relating to his suspension and termination, as Plaintiff had other means of redress, of which he availed himself and prevailed.[4] The court dismissed without prejudice Plaintiff's claims of malicious prosecution and intentional infliction of emotional distress, for failure to exhaust his administrative remedies under 28 U.S.C. § 2675 of the Federal Tort Claims Act, and also dismissed Plaintiff's punitive damages claim under Title VII and his Title VII claim as to individual Defendants. Defendants subsequently filed a motion for partial reconsideration on October 27, 2000. The district court issued an order on December 6, 2000, dismissing Plaintiff's Bivens claims as time-barred, as to the individual officers, except as to allegations of malicious prosecution.

---

1. The district court also granted summary judgment in favor of Defendants on Plaintiff's § 1985(3) conspiracy to interfere with Plaintiff's civil rights; however, Plaintiff does not raise this claim before this Court.

2. Plaintiff claims a severe mental disability and asserts he was hired by USPS through a "severely disabled" pool of applicants.

3. Plaintiff did not pursue his disability claim under the Rehabilitation Act, 29 U.S.C. § 791 et seq. as required for all federal employees. Maddox v. University of Tennessee, 62 F.3d 843, 846 (6th Cir.1995).

4. Plaintiff prevailed in a separate grievance procedure only as to his last suspension on October 19, 1998.

A pretrial scheduling order set the discovery deadline for April 2, 2001. On February 2, 2001, Defendants were served with Plaintiff's first Notice to Take Deposition of Mike Winters, pursuant to Fed. R.Civ.P. 30(b)(6). Upon receipt, Defendants' counsel contacted Plaintiff's counsel and requested both parties stipulate to stay discovery pending the outcome of Defendants' forthcoming motion for summary judgment. There is a discrepancy as to the proposed purpose of the motion, regarding whether or not it was intended to relate to the sole legal issues behind the alleged conspiracy to interfere with Plaintiff's civil rights, or whether its scope was always intended to be broader. Either way, both parties signed the stipulation, which the court then signed on February 27, 2001.

Defendants filed their motion for summary judgment on March 23, 2001. The district court ruled on Plaintiff's remaining claims: (1) Title VII race discrimination; (2) conspiracy to interfere with Plaintiff's civil rights under 42 U.S.C. § 1985(3); and (3) the *Bivens* claim for malicious prosecution as to the individual Defendants, granting Defendants summary judgment as to all of them. Plaintiff filed his timely Notice of Appeal on September 28, 2001.

### Substantive Facts

On March 13, 1997, Plaintiff finished his shift as a mail handler at the George W. Young United States Post Office in Detroit, Michigan, at approximately 11:30 p.m. He consumed food and alcohol at a nearby establishment until approximately 2:00 a.m. on March 14, 1997, where he then walked to the postal parking lot to retrieve his vehicle.

Plaintiff allegedly could not unlock his car due to icy weather conditions, and therefore proceeded to look for assistance. Plaintiff approached a postal patrol car driven by Defendant U.S. Postal Officer Ralph Engquist (a white male), in the postal parking lot. Engquist believed Plaintiff to be intoxicated and advised Plaintiff that he was prohibited from driving his car out of the postal parking lot in his condition, and that Plaintiff should come back to retrieve his car later. Plaintiff admitted that he was drinking and attempted to shake Officer Engquist's hand, which Engquist refused.

Plaintiff alleges Engquist then exited his vehicle, called for backup, and initiated a confrontation. Upon arrival of three additional Postal Officers (all white males), in response to Engquist's backup call, the verbal confrontation became physical, resulting in Officers Montgomery and Sergeant Primo driving Plaintiff handcuffed to the main post office. Montgomery and Primo have testified that Plaintiff continued to struggle and yell during the trip to the post officer. Plaintiff was restrained for approximately ten minutes at the Postal Headquarters until the Detroit Police arrived and took him into custody.

Plaintiff's conduct on the morning of March 14, 1997 resulted in the initiation of two separate proceedings. Plaintiff was immediately placed on emergency off-duty status by the USPS for violation of postal regulations with the matter being assigned to Postal Inspector Michael Winters for investigation. Additionally, an initial criminal complaint was filed against Plaintiff in the U.S. District Court for the Eastern District of Michigan for assaulting a federal officer, but was dismissed without prejudice on March 25, 1997, pending more investigation. Plaintiff's job with the USPS was terminated on March 28, 1997, in connection with the March 14, 1997 incident for failure to meet USPS standards and conduct, for which he received a Notice of Removal, dated April 1, 1997.

As a result of his termination, Plaintiff pursued a grievance under the USPS collective bargaining agreement. Following an evidentiary arbitration hearing, on August 1, 1998, the arbitrator reversed the termination decision and ordered a nine-month suspension for Plaintiff, finding that Plaintiff and Defendants shared blame in the escalation of the incident. Plaintiff was placed in a paid, administrative leave status on October 10, 1998. Plaintiff was then indefinitely suspended nine days later, on October 19, 1998, due to a new federal grand jury indictment against Plaintiff for assaulting a federal officer during the March 14, 1997 incident. Plaintiff went to trial and was subsequently acquitted on March 17, 1999.

Plaintiff filed a second grievance with the USPS, challenging the October 19, 1998 indefinite suspension, which was resolved through a pre-arbitration agreement. Under the settlement agreement, Plaintiff returned to work on April 4, 1999, and received approximately two weeks of back pay. As of the filing date of this appeal, Plaintiff is an USPS employee.

Plaintiff also filed an EEOC complaint alleging "discriminatory treatment" based upon his placement on "non-duty" status on March 14, 1997 and the March 28, 1998 termination. On February 28, 2000, the USPS issued a final agency Decision dismissing the EEOC complaint because of the pendency of a related case seeking enforcement of the August 1, 1998 Arbitrator's award, *Local Union No. 307 v. U.S. Postal Service*, Case No. 00–70424 (E.D.Mich), which was resolved through a settlement agreement in March 2000.

On September 25, 2000, EEOC Administrative Judge Mimi M. Gendreau issued a decision concluding there had been no discrimination[5] because Plaintiff was unable to prove "that he was treated less favorably than a similarly situated employee not in his protected class." Judge Gendreau acknowledged the EEOC's receipt of the documentation regarding Plaintiff's October 19, 1998 Notice of Indefinite Suspension, but asserted that the EEO complaint related directly to Plaintiff's March 14, 1997 placement on off-duty status and the April 1, 1997 Notice of Removal, and the decision solely contemplated those issues.

## DISCUSSION

### A. Summary Judgment Opposition

This Court reviews claims regarding the premature granting of summary judgment motions due to the non-movant's lack of sufficient discovery under an abuse of discretion standard, and the argument is not preserved for appeal unless it is first advanced in the district court. *See Vance v. United States*, 90 F.3d 1145, 1149 (6th Cir.1996). Summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery. *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231–32 (6th Cir.1994).

Plaintiff alleges he was not given adequate time for discovery before the Defendants filed and were granted a motion for summary judgment. In order to appeal the issue of timing of a summary judgment motion, the request for additional discovery in opposition to a summary judgment motion must not be raised for the first time on appeal. *Vance*, 90 F.3d at 1149. Although it is generally improper to grant summary judgment without affording the non-movant sufficient opportunity for discovery, the non-movant bears the burden of informing the district court of his need for discovery. *Id.* (citing *Plott v. General*

---

**5.** Judge Gendreau's decision was issued after Plaintiff filed this lawsuit, apparently because the Judge was not informed of the pendency of this matter at the district court level.

*Motors Corp.,* 71 F.3d 1190, 1195 (6th Cir. 1995)). Thus, before a summary judgment motion is decided, a non-movant must file an affidavit pursuant to Fed.R.Civ.P. 56(f) that details the discovery needed, or file a motion for additional discovery. *Wallin v. Norman,* 317 F.3d 558, 564 (citing *Good v. Ohio Edison Co.,* 149 F.3d 413, 422 (6th Cir.1998) (holding that a party invoking Rule 56(f) protections must "affirmatively demonstrate ... how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact") (internal quotation marks omitted)). If the non-movant does neither, "this court will not normally address whether there was adequate time for discovery." *Vance,* 90 F.3d at 1149. When Defendants filed their summary judgment motion, Plaintiff had just issued his first deposition request, four months into the allotted six month discovery period. Defendants subsequently requested to stipulate to a stay of discovery until resolution of their anticipated summary judgment motion. In opposing the motion for summary judgment, Plaintiff neither filed a Rule 56(f) motion detailing the discovery needed, nor a separate motion for additional discovery prior to any resolution of the summary judgment motion. Plaintiff solely responded to the Defendants' motion for summary judgment with an opposing brief, which did not include supporting affidavits detailing the disputed material facts. *See* Fed.R.Civ.P. 56(e).

■ Given the dearth of information Plaintiff communicated to the district court in response to the Defendants' summary judgment motion, the issue of timeliness with respect to the district court's grant of summary judgment is not properly before this Court. *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.,* 280 F.3d 619, 627–28 (6th Cir.2002) (recog-

nizing the Court will not normally address whether there was adequate time for discovery absent the Court's apprisal of discovery issues prior to the appellate process, except here where Plaintiff set forth identical discovery issues in a simultaneously filed opposition to a motion to stay discovery); *see also Vance,* 90 F.3d at 1149–50 (holding that Plaintiff's right to argue a need for discovery prior to the entry of summary judgment was preserved since Plaintiff moved to vacate summary judgment ten days later and included precisely the discovery needed and not "generalized statements [of necessary] discovery"). Plaintiff's efforts do not rise to the level this Court has previously considered to warrant exception to this rule. *Id.*

Nevertheless, even if properly brought before the Court at this time, the district court judge did not abuse his discretion when granting Defendants' summary judgment motion. Absent proper denial on the merits, discussed *infra,* Part II, the district court's denial was based solely on its receipt of an opposition brief from Plaintiff without a detailed summation of the material facts that were in dispute. The district court even went beyond its necessary analysis and "looked to Plaintiff's statement of substantive fact provided in his response brief to Defendants' motion and considered it in a light most favorable to Plaintiff." The court was unable to construe any statements as facts specific enough to sufficiently defeat Defendants' motion for summary judgment. *Klepper v. First American Bank,* 916 F.2d 337, 343 (6th Cir.1990); *see also Emmons v. McLaughlin,* 874 F.2d 351 (6th Cir.1989).

■ Finally, Plaintiff's assent to the stipulated agreement to stay discovery until the resolution of the Defendants' summary judgment motion does not assist Plaintiff's argument. In fact, the district court noted that the stipulation Plaintiff

refers to as one supposedly limited to the intra-corporate conspiracy claim contains no such limiting language and was not objected to by Plaintiff upon signing.

District courts have broad discretion in determining whether or not a party should be held to its stipulation, and may relieve a party from such stipulation if the consequence of not doing so would result in "manifest injustice." *Fairway Constr. Co. v. Allstate Modernization, Inc.,* 495 F.2d 1077, 1079 (6th Cir.1974) (stating the general rule is that stipulations entered into freely and fairly are not to be set aside except to avoid manifest injustice); *Morrison v. Genuine Parts Co.,* 828 F.2d 708, 710 (11th Cir.1987) (citing *Central Distributors, Inc. v. M.E.T., Inc.,* 403 F.2d 943, 945 (5th Cir.1968)). Plaintiff's failure to assent to the procedural guidelines regarding his opposition to the summary judgment and the dearth of information made available to the court regarding disputable material facts in connection with the summary judgment motion were Plaintiff's fatal flaws, not the stipulated agreement to stay discovery. This Court need not weigh the injustice that may or may not have occurred since, absent the stipulation, Plaintiff still would have fallen short of demonstrating sufficient opposition to the motion for summary judgment that the Defendants had every right to file.

### B. Merits of Plaintiff's Title VII Claim

This Court reviews *de novo* a district court's grant of summary judgment. See *EEOC v. Prevo's Family Mkt.,* 135 F.3d 1089, 1093 (6th Cir.1998). Summary Judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c);

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The evidence, all facts and any reasonable inferences from the facts must be viewed in the light most favorable to the moving party. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). This Court, like the district court, may not make credibility determinations or weigh the evidence before it when determining whether an issue of fact remains for trial. See *Ahlers v. Schebil,* 188 F.3d 365, 369 (6th Cir.1999) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Plaintiff appeals from the summary judgment granted with respect to his Title VII race discrimination claim, and his *Bivens* action for malicious prosecution. As discussed above, upon review of the record, Plaintiff failed to establish a *prima facie* case of racial discrimination, therefore subjecting his suit to summary judgment.

Plaintiff's claim under section 2000e–16 of Title VII provides in relevant part: *"(a) Discriminatory practices prohibited; employees or applicants for employment subject to coverage-*All personnel actions affecting employees or applicants for employment [ ], in the United States Postal Service and Postal Rate Commission [ ] shall be free from any discrimination based on race, color, religion, sex or national origin. . . ." 42 U.S.C. § 2000e–16(a).

A plaintiff may establish a claim of discrimination either by introducing direct evidence of discrimination, or by proving circumstantial evidence which would support an inference of discrimination. *Logan v. Denny's, Inc.,* 259 F.3d 558, 566–67 (6th Cir.2001) (citing *Kline v. Tenn. Valley Auth.,* 128 F.3d 337, 348 (6th Cir.1997)). The burdens of proof for indirect claims of

employment discrimination have been established under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later clarified in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The *McDonnell Douglas* approach requires three stages of proof. First, the plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If plaintiff is successful in establishing its *prima facie* case, there is then a presumption of discrimination and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* Finally, if the defendant meets its burden, then plaintiff must prove that the proffered reasons were merely pretextual. *Id.* at 804, 93 S.Ct. 1817. Pretext is proven by a direct showing that a discriminatory reason, more likely than not, motivated an employer, or by an indirect showing that the employer's explanation is not credible. *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089.

In order for plaintiff to establish a *prima facie* case of discrimination he/she must prove 1) that he/she is a member of a protected group; 2) that he/she was subject to an adverse employment decisions; 3) that he/she was qualified for the position; and 4) that similarly situated non-protected employees were treated more favorably than plaintiff. *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 479 (6th Cir. 2003); *see also Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992).

Defendants alleged in their motion for summary judgment that Plaintiff failed to establish discriminatory treatment in his complaint, and referred the court to the EEOC decision, dated September 25, 2000, to better explain the discriminatory treatment charged by Plaintiff which resulted in this appeal. That administrative proceeding addressed whether or not Plaintiff was discriminated against because of race when placed in non-duty status on March 14, 1997, and issued his notice of removal on March 28, 1997.[6]

Plaintiff alleges that his placement on non-duty status, and his subsequent discharge, both of which arose out of the incidents of March 13, 1997, were based on the discriminatory practices of the USPS. Plaintiff alleges that race was a factor that made a difference in Defendants' decision to subject him to the wrongful and discriminatory treatment of which he complains. Plaintiff describes the initial altercation in which he was involved with the other four white officers, the inconvenience of the temporary incarceration, and the subsequent employee reprimands; however, he mentions nothing regarding how he would fulfill the requirements of establishing his *prima facie* case.

■ Plaintiff is an African–American; therefore, he is a member of a protected class. *Logan*, 259 F.3d at 567. Plaintiff alleges he has suffered an adverse employment action by being deprived of a job, for which he was qualified, inasmuch as he was placed on non-duty status and subsequently terminated for a period of time without pay. Nevertheless, the fulfillment of Plaintiff's final prong is the disputable issue: the proof that similarly situated, non-protected employees were treated more favorably. *Seay*, 339 F.3d at 479.

---

**6.** Plaintiff's claim before this Court deals solely with the employment actions pertaining to his placement on non-duty status on March 14, 1997 and his March 28, 1997 Notice of removal. These are the claims that have been exhausted at the administrative level. Plaintiff's October 18, 1998 indefinite suspension was settled through a grievance process by way of a Pre–Arbitration Settlement Agreement.

Defendants' contention is that there is no proffered evidence showing Plaintiff was treated less favorably than any other similarly situated, non-protected employee. In the record, Defendants assert that Plaintiff's supervisor, Elizabeth Washington–Gibson, had placed two other employees on "emergency suspension for their involvement in a physical/verbal altercation followed by removal, in the two years preceding Oatman's discharge." Defendants point out that both employees were black employees, as was the supervisor herself. *Id.*

Plaintiff's primary argument is that his *prima facie* case will be established when he is given the opportunity to engage in the necessary discovery. However, as discussed above, Plaintiff does not have a right to additional discovery, and based on his current argument, he does not even adequately explain where he would begin.

It is clear that Plaintiff has not established a *prima facie* case for race discrimination; however, Defendants still argue that there were legitimate, non-discriminatory reasons for Plaintiff's discharge. The USPS discharged Plaintiff based on his March 14, 1997 verbal and physical altercation with the Postal Police Officers, and based on his substantial disciplinary record predating the incident.[7]

Finally, under *McDonnell Douglas* the burden would shift back to Plaintiff to prove that these proffered reasons by Defendants were merely pretextual. 411 U.S. at 804, 93 S.Ct. 1817; *see also Kline*, 128 F.3d at 347–48. Unfortunately, Plaintiff does not get that far. There is no evidence, direct or circumstantial, to support a finding of racial discrimination at the *prima facie* level, much less at final stage of *McDonnell Douglas'* burden shifting analysis in connection with Plaintiff's claims of pretextual reasons for his dismissal. Therefore, this Court is persuaded that the district court correctly found that Plaintiff failed to sufficiently set forth a *prima facie* case necessary to survive summary judgment.

## C. The Merits of Plaintiff's *Bivens* Claims

■ The last claim Plaintiff appeals is the right to pursue his *Bivens*[8] claim for malicious prosecution. *Bivens* actions are judicially created damages remedies against an individual for violation of a constitutional right. 403 U.S. at 392, 91 S.Ct. 1999, *see also Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (authorizing the extension of *Bivens* claims and damages to Fifth Amendment violations). The exception to *Bivens* occurs when "special factors counseling hesitation" exist or "Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective." *Hammons v. Norfolk Southern Corp.*, 156 F.3d 701, 704 (6th Cir.1998).

The district court did not err in dismissing Plaintiff's *Bivens* claim asserting a due process violation under the Fifth Amendment against USPS as an entity. Plaintiff's sole available *Bivens* claim during the summary judgment phase was a claim for

---

7. Prior to his March 14, 1997 incident, Plaintiff had been disciplined by the USPS on at least twelve separate occasions. (J.A. at 298–322).

8. In *Bivens*, the Supreme Court held that damages may be recovered from federal agents for injuries inflicted by them in violation of a victim's Fourth Amendment rights, even absent a statute authorizing a federal cause of action. *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 396–97, 91 S.Ct. 1999, 29 L.Ed.2d 619(1971).

malicious prosecution as to the individual officers, for which Plaintiff pled no additional factual allegations. Plaintiff's previous claims for which *Bivens* damages may have been available, such as his conspiracy claim under 42 U.S.C. § 1985, and his alleged due process violation under the Fifth Amendment, were dismissed prior to Defendants' summary judgment motion. Therefore, Plaintiff may now only appeal the summary judgment of the federal claim of malicious prosecution by officers or employees of USPS acting in their individual capacity.

The viability of a federal malicious prosecution claim has been contemplated in this Court for years, and remains unresolved. *Thacker v. City of Columbus,* 328 F.3d 244, 259 (6th Cir.2003). In *Thacker* we reviewed this Court's history of dealing with such claims: (1) the need for an accompanying Fourth Amendment, as opposed to a Fourteenth Amendment, violation in order to bring a malicious prosecution claim, citing *Spurlock v. Satterfield,* 167 F.3d 995, 1005–07 (6th Cir.1999); (2) then the preclusion of a malicious prosecution claim where a separate Fourth Amendment violation was present, citing *Frantz v. Village of Bradford,* 245 F.3d 869, 875–77 (6th Cir.2001); and (3) ultimately returning to the original rule in *Spurlock,* citing *Darrah v. City of Oak Park,* 255 F.3d 301, 308–311 (6th Cir. 2001). In *Thacker* we did not ultimately resolve the issue as to the elements needed in a federal malicious prosecution

claim, except to recognize that, in order to proceed with a claim "at a minimum, 'there [can be] no probable cause to justify [his] arrest and prosecution.' " 328 F.3d at 259 (citing *Spurlock,* 255 F.3d at 312).[9]

The district court ruled that the only factual allegation pled, as to the individual acts of the officers, was the alleged misrepresentation and perjurious testimony of Postal Inspector Mike Winters.[10] Petitioner accused Winters of making "representations and [giving] misleading information to the grand jury when he testified about events that never occurred and responded to direct questions posed by the grand jury with perjurious answers." Nevertheless, Plaintiff did not point the district court to any particular testimony given by Officer Winters that Plaintiff alleged was perjurious, nor does Plaintiff do so now, before this Court. Plaintiff also fails to point to any other additional facts that support his allegation of malicious prosecution.

 Furthermore, as to Winter's testimony, there can be no viable Fifth Amendment violation inasmuch as Inspector Winter's testimony is covered under absolute immunity since his statements stemmed from his grand jury testimony. *Macko v. Byron,* 760 F.2d 95, 97 (6th Cir.1985) (citing *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)). Finally, even this analysis by the Court goes far beyond the argument made by Plaintiff on

---

9. Whether Plaintiff may even bring a malicious prosecution claim under the Fifth Amendment's deprivation of liberty without due process clause is an issue the Court will not address at this time since the allegations Plaintiff puts forth concerning violation of his liberty with regard to malicious prosecution are void of any real factual support.

10. Plaintiff also pled under the "Constitutional Violation" section of his complaint that he

was "taken into physical custody, not allowing him the use of the facilities and not allowing him to obtain medical care for the personal injuries sustained to him[ ] by the direct actions of the officers." As the district court correctly pointed out, there is no mention of Plaintiff's prosecution in that claim, and claims concerning those actions alleged in that section of the complaint have been dismissed as time-barred.

appeal regarding this issue. There are no factual allegations to support Plaintiff's claim of malicious prosecution; therefore, there is no basis to support Plaintiff's *Bivens* action.

## CONCLUSION

For the above stated reasons, the district court's order is AFFIRMED.