RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0202P (6th Cir.)
File Name: 01a0202p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

LUCINDA DARRAH,
       _Plaintiff-Appellant,_

    _v._

CITY OF OAK PARK, et al.,
       _Defendants,_

RUSSELL BRAGG, a Troy
police officer,
       _Defendant-Appellee._

No. 00-1253

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-74365—George E. Woods, District Judge.

Argued: March 9, 2001

Decided and Filed: June 22, 2001

Before: SILER, MOORE, and CLAY, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Kevin S. Ernst, LAW OFFICE OF K. S. ERNST,
Detroit, Michigan, for Appellant. Lori Grigg Bluhm, Troy,
Michigan, for Appellees. **ON BRIEF:** Kevin S. Ernst, LAW

1

OFFICE OF K. S. ERNST, Detroit, Michigan, for Appellant. Lori Grigg Bluhm, Troy, Michigan, for Appellees.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge.   Plaintiff-Appellant Lucinda Darrah ("Darrah" or "plaintiff") appeals the district court's decision granting summary judgment to Officer Russell Bragg ("Bragg") on her excessive force and malicious prosecution claims, both brought pursuant to 42 U.S.C. § 1983.  We **AFFIRM** the district court's decision.

## I.  BACKGROUND

Early in the morning on October 8, 1995, Lucinda Darrah arrived at the Detroit Newspaper Agency's ("DNA") Oak Park, Michigan distribution center to participate in an organized picketing in support of Detroit's unionized newspaper workers.  The picketing was organized to coincide with the DNA's efforts to distribute the Sunday edition of the newspaper.  Upon seeing the growing number of picketers arriving at the distribution center, Detective Krizmanich of the Oak Park Police Department called upon other officers from surrounding areas to assist in the handling of the situation.  Thirty-seven officers and thirteen commanders responded to this call for assistance, including Officer Russell Bragg of the City of Troy Police Department.

By around 4:00 a.m., approximately two hundred picketers had arrived at the DNA distribution center.  About one hour later, after several hours of unsuccessful negotiations aimed at encouraging the demonstrators to leave the distribution center driveway voluntarily so that the newspaper trucks could leave the premises, the officers decided to attempt to move the picketers off the driveway.  The officers first spoke to the crowd over a bullhorn, stating that it was in violation of an Oak Park ordinance prohibiting demonstrators from blocking ingress and egress to property.  The crowd only

probable cause to prosecute Darrah for obstructing a police officer.

After reviewing the evidence and the arguments presented by Darrah, we conclude that no reasonable jury could find that Officer Bragg's allegedly misleading acts and omissions affected the state court's determination of probable cause in any way.  Accordingly, having recognized a § 1983 claim of malicious prosecution pursuant to *Spurlock*, we **AFFIRM** the district court's decision granting Officer Bragg summary judgment on this claim.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's decision granting Officer Bragg summary judgment with respect to Darrah's excessive force and federal malicious prosecution claims.

the civilian on whose behalf Plaintiff intervened[.]" Appellant's Br. at 35-36.

Taking these allegations into account, it is clear that, regardless of any alleged misinformation provided to the court by Bragg, the state court would have concluded that there was probable cause to arrest Darrah and hold her over for trial. First, the state court transcript clearly refutes plaintiff's claim that whether she was grabbing Bragg's gun belt or his ankle affected the court's decision to hold her over for trial. In the preliminary hearing, the court stated that the mere act of pulling on the officer, regardless of whether it was his belt or his ankle, was enough to constitute probable cause to hold plaintiff over for trial. J.A. at 144 (Prelim. Examination Tr.). Plaintiff also admitted in her deposition that she was trying to interfere with the officers' actions when they were using force on Dearmond. J.A. at 87 (Darrah Dep.).

Plaintiff further claims that Officer Bragg's misleading police report, which allegedly indicated that he was engaging in a lawful arrest of Dearmond, influenced the state court's decision to find probable cause for plaintiff's arrest and prosecution on the obstruction charge. There are two problems with this argument: first, based on the facts alleged by Darrah and the information in the police report, there is no indication that Bragg's report misled the court in any way; second, under Michigan law, while arrestees have the right to use physical force to resist an unlawful arrest, third-party intervenors do not. *City of Detroit v. Smith*, 597 N.W.2d 247, 249-50 (Mich. Ct. App. 1999). Thus, even though Bragg may have used force against Dearmond when attempting to handcuff him that the plaintiff considered excessive, plaintiff had no right under Michigan law to resort to physical force against Officer Bragg in an attempt to aid Dearmond. Because Darrah had no right to intervene physically on Dearmond's behalf even if she thought the officer's use of force was excessive, the extent to which Bragg informed the court of the force he used in his attempts to detain Dearmond could not have affected the state court's determination of the

became more vocal after this warning, and then began to chant at the officers.

After the picketers ignored this warning, the officers then formed two lines and began to walk toward the middle of the driveway. The officers planned to expand their two lines out from the middle of the driveway, thus forcing the picketers to move back and away from the driveway. The officers in the formation had been instructed to take no shields or sticks and to use no tear gas. The officers were also told that if they met any physical resistance, they should retreat to the original staging area, where they would then make a decision as to what to do.

The police had previously assigned various officers to form three arrest teams, whose duty "was to arrest individuals that were pointed out to [them] by supervisors as violating a city ordinance." Joint Appendix ("J.A.") at 115 (Bragg Test.). Officer Bragg was assigned to one of the arrest teams.

As the officers expanded their lines across the driveway, approximately half of the picketers voluntarily moved off to the side. One group of picketers refused to move, however, and remained in the middle of the driveway in a tight circle. Lieutenant Richard Cain, one of the supervising officers on the scene, approached a man in this group and instructed him to leave the driveway. The man, Bill Dearmond, remained in the driveway, looking defiantly at Cain as he repeated his order to move. After Dearmond refused to move, Cain instructed Bragg and the other two officers in his arrest team, Officers Petrides and Smith, to arrest Dearmond.

Officers Petrides and Bragg approached Dearmond and were able to grab hold of him. At this point, however, another picketer jumped onto the officers' backs before Officer Smith could restrain Dearmond. Dearmond backpedaled further into the crowd as Officers Bragg and Petrides again attempted to arrest him. The plaintiff, who was back too far in the crowd to see what was happening at the front of the picket lines, only then noticed Officers Petrides and Bragg approaching. According to Darrah, the two

officers were running toward the back of the crowd, pushing Dearmond along as they went. Darrah testified that the officers then "ram[med]" Dearmond to the ground and placed him in an arm lock, jerking his arm back further and further. J.A. at 86 (Darrah Dep.).

Upon witnessing this use of force, Darrah bent over, grabbed Officer Bragg by the ankle, and began tugging it with both hands, all the while telling him to stop hurting Dearmond.[1] Darrah stated that she was interfering with the officers' actions because she felt their conduct constituted police brutality.

Bragg was able to pull his ankle loose from Darrah's grasp, yet Darrah again grabbed hold of his ankle and told him to stop. At this point, both Darrah and Bragg essentially agree that Bragg "turned and swung backwards" with his left arm, hitting Darrah in the mouth. J.A. at 116 (Bragg Test.); J.A. at 88 (Darrah Dep.). Darrah was knocked backward and hit her head on what she believes was a parking block. Darrah suffered a "split lip" from the blow which required six or seven stitches. J.A. at 79 (Darrah Dep.).

Officer Bragg testified that he did not get a good look at the person who he claimed was tugging at his belt, other than to see that the person was female. After knocking Darrah away from him, Bragg went back to "trying to arrest" Dearmond with Officer Petrides, yet by this point Dearmond had regained his footing and had taken off through the crowd. J.A. at 116-17 (Bragg Test.).

After the situation had settled down, officers spoke with Darrah and asked for her version of what had transpired. According to Lieutenant Cain's police report, Darrah refused

---

[1] Officer Bragg claims that it was not his ankle, but his gun belt, that was being pulled. J.A. at 118. For purposes of a summary judgment motion, this court must view the facts in the light most favorable to Darrah, the nonmoving party. *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001).

at *5. The *Frantz* court explained "that establishing a § 1983 cause of action requires a constitutional violation and cannot differ depending on the tort law of a particular state." *Id.*

Other than its holding that a § 1983 action for malicious prosecution requires a constitutional violation, the *Frantz* court did not further explicate the elements of a § 1983 malicious prosecution claim under the Fourth Amendment, because *Frantz* later held that no such claim exists after *Albright*. We need not enunciate a test for malicious prosecution under § 1983 either, however, for Darrah can show no constitutional deprivation in this case. Regardless of the specific elements of the federal malicious prosecution claim, plaintiff is unable to allege an unreasonable seizure under the Fourth Amendment, *i.e.*, that there was no probable cause to justify her arrest and prosecution. *See Albright*, 510 U.S. at 273-75.

We need not proceed any further than the probable cause analysis to decide plaintiff's malicious prosecution claim. Plaintiff claims in her brief that the state court's determination of probable cause to prosecute her on the obstruction charge was based on false information provided by Officer Bragg. However, if this court finds that there was probable cause to prosecute Darrah, regardless of any alleged false statements made by Bragg, then she cannot make out a malicious prosecution claim under the Fourth Amendment.

"Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge 'were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.'" *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Plaintiff contends that Officer Bragg misled the state court by: 1) stating that plaintiff reached for his gun belt rather than his ankle when he was attempting to subdue Dearmond; 2) stating that he was conducting a lawful arrest when plaintiff interfered with him; and 3) failing to disclose to the court "that he was assaulting

satisfied in this case. In *Josey*, as in this case, the plaintiffs based their malicious prosecution claim in federal court on the grounds that the defendant-officers had knowingly supplied the magistrate with false information in order to establish probable cause. *Id*. at *2. Thus, the court held, plaintiffs were not attempting to relitigate the identical issue of whether probable cause exists; rather, they were arguing that the officers misstated material facts in order to establish probable cause at the state level. *Id*. (citing *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988)). Applying the same reasoning to this case, we hold that the state court's determination of probable cause at the preliminary hearing is not identical to the issue Darrah argues today, that being whether Officer Bragg made materially false statements to the state judge that formed the basis of that court's probable cause determination. Accordingly, we proceed to a review of the merits of Darrah's Fourth Amendment malicious prosecution claim.

**b.    The Merits of Darrah's Malicious Prosecution Claim**

In *Frantz*, this court held that, following *Albright*'s holding that the "Fourth Amendment is the only 'peg' on which to hang a § 1983 claim alleging malicious prosecution," we may no longer rely on the state law of malicious prosecution to define the proper cause of action for a federal malicious prosecution claim under § 1983.[4] *Frantz*, 2001 WL 387731,

---

[4] In light of *Albright*'s holding, the *Frantz* court disavowed any further reliance on *Coogan*, 820 F.2d at 174-75, which had previously held that a § 1983 action for malicious prosecution is defined, in part, by the elements of the state law tort of malicious prosecution. We are bound by the *Frantz* court's holding disavowing our prior decision in *Coogan* because *Frantz* applied the new Supreme Court decision in *Albright* to the *Coogan* case that had preceded *Albright*. We are not bound by the *Frantz* court's interpretation of *Spurlock*, however, because *Spurlock* (unlike *Coogan*) was decided after *Albright*, and had interpreted *Albright* in concluding that a § 1983 cause of action for malicious prosecution does exist under the Fourth Amendment. No new Supreme Court case justified the *Frantz* court's decision to disregard *Spurlock*.

to identify herself to the police. Cain further stated in his police report that "[t]he only reason she was not placed under arrest" at that time was because she asked to go to a hospital. J.A. at 223 (Cain Police Report). Darrah's personal information was later obtained from the ambulance staff that treated her on the scene. An arrest warrant for Darrah for obstructing a police officer was not issued until February 14, 1996, more than four months after the incident.

A preliminary hearing on Darrah's obstruction charge was held on May 9, 1996, at which time the state district court determined that there was probable cause to hold Darrah over for trial. The court noted that regardless of Darrah and Bragg's differing accounts of the events, the mere act of pulling an officer while he was lawfully performing his duty was enough to "constitute[] . . . resisting and obstruction." J.A. at 144 (Prelim. Examination Tr.). Darrah's case proceeded to trial, where she was acquitted by a jury on August 7, 1997.

On October 7, 1998, plaintiff filed suit in the United States District Court for the Eastern District of Michigan, raising several claims against Officer Bragg, in his individual capacity, and the Cities of Oak Park and Troy. More specifically, Darrah alleged that Officer Bragg's conduct violated her Fourth Amendment rights, and, under 42 U.S.C. § 1983, sued him for excessive force in striking her in the face after she attempted to prevent him from subduing Dearmond, and for malicious prosecution based on her claim that the state court's probable cause finding was founded upon Bragg's materially false statements, including Bragg's claim that Darrah had grabbed his gun belt.

The defendants then filed a motion for summary judgment. While it is unclear from the record, it appears that the plaintiff thereafter voluntarily dismissed her claims against the Cities of Oak Park and Troy. The district court then granted the defendants' motion for summary judgment with respect to the remaining § 1983 claims of excessive force and malicious

prosecution against Officer Bragg. Darrah now appeals these remaining claims against Officer Bragg to this court.

## II. ANALYSIS

### A. Standard of Review

This court reviews de novo a district court's decision to grant summary judgment. *Campbell*, 238 F.3d at 775. The moving party has the burden of establishing that there are no genuine issues of material fact, and that it is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A dispute over a material fact cannot be "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the district court's decision to grant summary judgment, this court must view all evidence in the light most favorable to the nonmoving party. *Campbell*, 238 F.3d at 775.

### B. Darrah's Excessive Force Claim

While excessive force claims are often best analyzed under the Fourth Amendment's protection against unreasonable seizures, *Graham v. Connor*, 490 U.S. 386, 394 (1989), the Supreme Court has recently cautioned that not "all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendments[.]" *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Instead, the Court noted that "*Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Id*. Thus, while the Fourth Amendment "objective reasonableness" analysis should be used in excessive force cases involving searches and seizures, where there is no search or seizure, the Supreme Court has held that the substantive component of the Fourteenth Amendment's due process clause is the most appropriate lens

pursuant to her Fourth Amendment right against unlawful seizures. J.A. at 17-18 (Compl.).

#### a. Collateral Estoppel

As stated earlier, plaintiff brings her Fourth Amendment malicious prosecution claim on the grounds that the state court's probable cause finding was based on Officer Bragg's false statements and omissions. The district court, in granting defendant's motion for summary judgment with respect to Darrah's malicious prosecution claim, based its decision, in part, on the doctrine of collateral estoppel. The district court stated that plaintiff was precluded from raising the issue of probable cause for a second time after the state court, in an adversary proceeding, had already determined that there was probable cause to hold her over for trial. *See Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987) ("where the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action.").

As the Supreme Court has held, we must apply the state law of collateral estoppel when deciding whether the state court's determination of probable cause at the preliminary hearing has preclusive effect in this § 1983 action. *Haring v. Prosise*, 462 U.S. 306, 313 (1983). Under Michigan law, issue preclusion applies when 1) there is identity of parties across the proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated and necessarily determined in the first proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding. *People v. Gates*, 452 N.W.2d 627, 630-31 (Mich.), *cert. denied*, 497 U.S. 1004 (1990).

Following our reasoning in *Josey v. Salisbury*, No. 92-2093, 1993 WL 476974 (6th Cir. Nov. 18, 1993), an unpublished case with similar facts, we hold that the identity of the issues requirement under Michigan law has not been

decision of this court conflicts with one of our prior published decisions, we are still bound by the holding of the earlier case. *Sowards v. Loudon County, Tenn.*, 203 F.3d 426, 431 n.1 (6th Cir. 2000); *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 180 F.3d 758, 765 (6th Cir. 1999), *rev'd on other grounds*, 121 S. Ct. 924 (2001).

Although we believe the *Spurlock* case to be binding rather than *Frantz*, because this court's decision in *Frantz* has clouded the already murky waters of *Albright* and a plaintiff's right to bring a malicious prosecution claim under the Fourth Amendment, we will examine Darrah's malicious prosecution claim under both *Spurlock* and *Frantz*. Under either approach, Darrah's malicious prosecution claim will be unsuccessful.

### 1. *Frantz*

If we were to apply *Frantz* to this case, we would have to dismiss Darrah's malicious prosecution claim because she has no separate § 1983 action for malicious prosecution under the Fourth Amendment. *Frantz*, 2001 WL 387731, at *6-7 & n.2. If *Frantz* were binding, it appears that, at most, a plaintiff could recover additional damages as part of her overall Fourth Amendment claim if, following an arrest without probable cause in violation of the Fourth Amendment, a prosecution follows. *Id*. at *7. No additional damages would be available to Darrah based on her prosecution for obstructing a police officer, however, for we earlier affirmed the district court's decision that no reasonable jury could find in Darrah's favor on her underlying excessive force claim. In accordance with *Frantz*, we would have to dismiss Darrah's federal malicious prosecution claim.

### 2. *Spurlock*

Assuming, as we do, that *Spurlock* still binds this court even after *Frantz*, a plaintiff has a constitutionally cognizable claim of malicious prosecution under the Fourth Amendment. In this case, Darrah brings her malicious prosecution claim

with which to view an excessive force claim. *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998).

A substantially higher hurdle must be surpassed to make a showing of excessive force under the Fourteenth Amendment than under the "objective reasonableness" test of *Graham*, in which excessive force can be found if the officer's actions, in light of the totality of the circumstances, were not objectively reasonable. *Graham*, 490 U.S. at 396-97; *Lewis*, 523 U.S. at 845-46. The substantive due process rights of the Fourteenth Amendment protect citizens from the arbitrary exercise of governmental power. *Lewis*, 523 U.S. at 845. The test applied by the Supreme Court to determine when governmental conduct reaches this threshold is to ask whether the alleged conduct "shocks the conscience." *Id*. at 846. In *Lewis*, the Supreme Court explained that whether governmental conduct shocks the conscience depends on the factual circumstances of the case. *Id*. at 851-53. More specifically, in situations where the implicated government actors

> are afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action . . . , their actions will be deemed conscience-shocking if they were taken with "deliberate indifference" towards the plaintiff's federally protected rights. In contradistinction, in a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation . . ., public servants' reflexive actions "shock the conscience" only if they involved force employed "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline."

*Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (quoting *Lewis*, 523 U.S. at 852-53).

The first question in this case, then, is whether Officer Bragg's conduct in striking plaintiff in the face while plaintiff was attempting to prevent Bragg from executing an arrest

constitutes a seizure. If so, this court should apply the Fourth Amendment "objective reasonableness" analysis articulated in *Graham*. If not, this court must determine whether Bragg's conduct, given these circumstances, shocks the conscience. Ultimately, we conclude that, regardless of which test is applied, Darrah is unable to create a genuine issue of material fact with respect to her excessive force claim. Therefore, we need not and do not decide whether Bragg's conduct constitutes a seizure.

### 1. "Shock the Conscience" Test

Applying the "shock the conscience" test, the more difficult standard for the plaintiff to meet, it is clear that the district court's decision granting summary judgment to Officer Bragg must be affirmed. As stated earlier, the Supreme Court has held that different conscience-shocking standards should be applied depending on the circumstances in which the governmental action occurred. *Lewis*, 523 U.S. at 850-51. Unlike those instances where the government actor has the time to deliberate various alternatives before acting, this case is precisely one of those "rapidly evolving, fluid, and dangerous predicament[s] which precludes the luxury of calm and reflective pre-response deliberation[.]" *Claybrook*, 199 F.3d at 359. Officer Bragg, when grabbed from behind in a loud and unruly crowd of people, did not have time to deliberate the best possible course of action. Just the opposite is the case. In these instances, the Court has stated that the government actor's conduct shocks the conscience only if the force was applied "maliciously and sadistically for the very purpose of causing harm." *Lewis*, 523 U.S. at 853 (quotation omitted). Given the facts of this case, the plaintiff simply cannot show that any reasonable jury could find that Officer Bragg's conduct was malicious, sadistic, and imposed not to restore order, but only to cause harm.

### 2. "Objective Reasonableness" Test

Even if we were to apply the Fourth Amendment "objective reasonableness" test, an easier standard for the plaintiff to meet, there still is no genuine issue that Officer Bragg's

interpretation of *Albright*, the *Frantz* court held that, because only the plaintiff's Fourth Amendment malicious prosecution claim was before it, and because there was no separate claim of malicious prosecution under the Fourth Amendment after *Albright*, the police officer's request for qualified immunity from this nonexistent claim was unnecessary. *Id*. at *6-7.

Whether this was a proper reading of *Albright* is not our place to say, for "[a] panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision."[3] *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985); *see also* 6th Cir. R. 206(c) (stating that published panel opinions are binding on all subsequent panels). We do note, however, as did the dissenting opinion in *Frantz*, that the *Frantz* majority explicitly chose to disregard a prior binding precedent of this circuit that had interpreted *Albright* as authorizing a Fourth Amendment malicious prosecution claim. *Spurlock v. Satterfield*, 167 F.3d 995, 1006 & n.19; *see also Frantz*, 2001 WL 387731, at *7 (disregarding *Spurlock*). Contrary to *Frantz*, in *Spurlock*, this court expressly described *Albright* as establishing that "malicious prosecution of an individual and continued detention of an individual without probable cause clearly violate rights afforded by the Fourth Amendment[.]" *Spurlock*, 167 F.3d at 1006. Thus, *Spurlock* interpreted *Albright* as authorizing a Fourth Amendment malicious prosecution claim. As we have previously noted, when a later

---

[3]Nevertheless, it does appear that the *Frantz* court may have been reading too much into the *Albright* Court's decision not to address the Fourth Amendment issue. The *Albright* Court at no time explicitly stated that there is no separate constitutional claim for malicious prosecution based on the Fourth Amendment. In addition, by "not[ing] the Fourth Amendment's relevance to the deprivations of liberty that go hand in hand with criminal prosecutions[,]" it does not appear that the Court was intimating that, in cases based on Fourth Amendment violations, a plaintiff could never have a separate Fourth Amendment claim of malicious prosecution. *Albright*, 510 U.S. at 274.

would "express no view as to whether [his malicious prosecution] claim would succeed under the Fourth Amendment[.]" *Id*. at 271, 275.

The *Frantz* court, analyzing this discussion in *Albright*, interpreted the plurality as stating "that any recovery based on a claim of malicious prosecution in a case involving an illegal seizure is limited to that which is recoverable under a Fourth Amendment illegal seizure claim[.]" *Frantz*, 2001 WL 387731, at *6. In other words, the *Frantz* court held that plaintiffs have no separate § 1983 claim for malicious prosecution in cases based on alleged Fourth Amendment violations; in cases where the violation of Fourth Amendment rights is not at issue, however, the court interpreted *Albright* as stating that § 1983 malicious prosecution claims may still be available pursuant to the Fourteenth Amendment's substantive due process rights. *Id*. at *6-7 & n.2.

It appears that, in reaching this conclusion, the *Frantz* court was influenced by the Supreme Court's decision to dismiss Albright's malicious prosecution claim without deciding whether the claim would be successful under the Fourth Amendment. In *Albright*, the plurality explicitly refrained from deciding the issue whether plaintiff's malicious prosecution claim would succeed under the Fourth Amendment because the plaintiff had "not presented that question in his petition for certiorari." *Albright*, 510 U.S. at 275. The *Frantz* court did not interpret the plurality's decision as expressing a desire to address only the narrow issue presented, however. Instead, the *Frantz* court, from our reading, believed that the Court's refusal to address the Fourth Amendment issue stood for the proposition that, because there was no underlying Fourth Amendment claim of illegal seizure upon which Albright's claim was based (he had previously waived any Fourth Amendment claims arising out of the initial seizure that occurred when he surrendered himself to the State following the State's issuance of a warrant for his arrest), the Court could not address any "separate" claim of malicious prosecution under the Fourth Amendment. *Frantz*, 2001 WL 387731 at *6. Based on its

conduct did not amount to excessive force. In determining whether an officer's actions were objectively reasonable, courts must view the reasonableness of any seizure in light of the totality of the circumstances, analyzing the facts "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The *Graham* Court emphasized that, when conducting the reasonableness inquiry, we must keep in mind the "tense, uncertain, and rapidly evolving" circumstances in which officers are forced to make difficult decisions about the appropriate level of force to be used. *Id*. at 397. In addition, when determining the reasonableness of the force used, courts should pay particular attention to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396.

In this case, Officer Bragg and the other members of his arrest team were in the middle of a boisterous and unruly group of picketers attempting to make an arrest of an individual who was resisting their efforts. One picketer had just jumped on the backs of Officers Bragg and Petrides before the third officer was able to restrain him. The crowd was chanting in opposition to the police, and the noise grew louder as the officers attempted to clear the driveway. In the midst of this tumult, plaintiff grabbed Bragg's ankle with both of her hands and tried to prevent him from executing Dearmond's arrest. While Officer Bragg freed himself from her grasp initially, plaintiff grabbed his ankle again. Only then did Bragg swing his arm backward at the plaintiff so as to free himself and further attempt to subdue Dearmond.

Viewing these facts "from the perspective of a reasonable officer on the scene," *Graham*, 490 U.S. at 396, it is clear that Officer Bragg took relatively minimal measures to free himself from plaintiff, particularly after his first attempt at shaking her loose was only temporarily effective. In light of the totality of the circumstances in which Officer Bragg was

embroiled, we are convinced that any reasonable jury would find that Bragg's conduct was objectively reasonable.[2]

Thus, regardless of the standard that applies, plaintiff has failed to create a genuine issue of material fact with respect to the reasonableness of Bragg's conduct. Accordingly, the district court's decision granting Bragg summary judgment as to this claim is **AFFIRMED**.

## C. Darrah's § 1983 Malicious Prosecution Claim

Plaintiff brings her malicious prosecution claim against Officer Bragg under 42 U.S.C. § 1983, claiming that the state court's probable cause finding regarding her obstruction charge "was based on the materially false statements and/or omissions of Defendant Bragg." Appellant's Br. at 35. More specifically, plaintiff claims that, had Bragg not lied in stating that he was involved in a lawful arrest of Dearmond, and had he not failed to reveal that he was assaulting Dearmond before plaintiff intervened, there would not have been probable cause to hold plaintiff over for trial on the obstruction charge.

Important to our analysis of plaintiff's malicious prosecution claim is this circuit's recent opinion in *Frantz v. Village of Bradford*, --- F.3d ---, No. 99-4186, 2001 WL 387731 (6th Cir. Apr. 18, 2001). The *Frantz* court, interpreting the Supreme Court's plurality opinion in *Albright v. Oliver*, 510 U.S. 266 (1994), broke from the ranks of nine other circuit courts of appeals in holding that "the Fourth Amendment does not support a separate malicious prosecution claim independent of the underlying illegal seizure." *Frantz*, 2001 WL 387731, at *4-5, 7. In *Frantz*, a police officer was sued pursuant to § 1983 for violating an arrestee's Fourth Amendment rights to be free from unlawful

---

[2]Because any reasonable jury would find that Bragg's conduct was objectively reasonable, we need not determine whether Bragg's conduct was qualifiedly immune. *See Martin v. Heideman*, 106 F.3d 1308, 1312-13 (6th Cir. 1997); *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993).

arrest, excessive force, and malicious prosecution. Following the district court's denial of the officer's motion for summary judgment, the officer filed an interlocutory appeal with this court asserting qualified immunity only from plaintiff's malicious prosecution claim.

After deciding that it had jurisdiction to review the officer's interlocutory appeal, the court decided that, before examining whether the officer was entitled to qualified immunity, it must first determine whether the plaintiff's Fourth Amendment malicious prosecution claim, from which qualified immunity was sought, was even a "cognizable constitutional claim." *Id*. at *3. In making this determination, the court looked to the Supreme Court's plurality opinion in *Albright* for guidance.

The state of the law for malicious prosecution claims brought pursuant to 42 U.S.C. § 1983 has been unsettled since the Supreme Court's decision in *Albright*. *See* John T. Ryan, Note, *Malicious Prosecution Claims Under Section 1983: Do Citizens Have Federal Recourse?*, 64 Geo. Wash. L. Rev. 776, 803-09 (1996) (noting the confusion among lower federal courts after *Albright*). In *Albright*, a plurality of the court agreed that the substantive component of the Fourteenth Amendment's Due Process Clause, "with its scarce and open-ended guideposts," may not serve as the basis for a § 1983 malicious prosecution claim. *Albright*, 510 U.S. at 275 (quotation omitted). The plurality did explain, however, that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id*. at 273 (quotation omitted). As for any specific constitutional provisions relating to federal malicious prosecution claims, the plurality explained that the Court has "in the past noted the Fourth Amendment's relevance to the deprivations of liberty that go hand in hand with criminal prosecutions." *Id*. at 274. Nevertheless, stressing the "very limited" nature of the plaintiff's claim, the plurality stated that, because plaintiff had not presented the question in his petition for certiorari, it