SILER, Circuit Judge,
concurring in part and dissenting in part.
I concur in most of the conclusions in the majority opinion, but I respectfully dissent from a few of those conclusions for the reasons set out herein. First, I agree with the majority’s conclusion that there is no supervisory liability on the part of the defendants, Luanne Thomas, Darrell Ammon, and Wayne Kessinger. Therefore, the district court correctly granted summary judgment on their behalf. I also agree that the district court correctly found that the defendants, Joe Carroll, Steve Clark, and Dawn Katz, were not entitled to absolute immunity for their pretrial alleged fabrication of evidence.
However, I disagree with the majority’s conclusion that the case of Buckley v. Fitzsimmons, 919 F.2d 1230, 1244-45 (7th Cir.1990), is in conflict with the law of this circuit. The Buckley court granted absolute immunity to an expert’s pretrial activities, including the expert’s evaluation of the physical evidence, written reports, discussion of the ease with prosecutors, and preparation for testifying. 919 F.2d at 1244-45. Attempting to circumvent the absolute immunity protections granted to trial testimony, the plaintiff in that case had attacked the preparation of the expert testimony as a means of indirectly litigating the substance of the actual testimony given at trial. Id. The Buckley court ruled that the grant of absolute immunity for trial testimony would indeed be a “hollow immunity” if the aggrieved could so easily get around the bar, since almost all expert testimony entails extensive preparations and discussions with prosecutors. Id. at 1245. However, the court limited its holding by noting that absolute immunity might not apply where that expert’s pretrial activities “violate[d] a suspect’s rights independently,” by, for example, “ ‘cooking’ a laboratory report.” Id. The crucial factor in that case was that nothing in the complaint suggested that the expert defendants “hid evidence, as opposed to misinterpreting it.” Id. I do not think this is inconsistent with the law of this circuit.
I also agree with the majority that the denial of qualified immunity for the defendants, Katz and John Tarter, was proper. Under the allegations by the plaintiff, Katz and Tarter would not be entitled to qualified immunity. I agree with the majority’s conclusion that the district court correctly granted summary judgment to Carroll with respect to the allegations that Carroll violated Gregory’s Fourth Amendment rights by continuing Gregory’s detention without probable cause.'
On the other hand, I differ with the majority in reversing- the summary judgment granted to. Katz on the Fourth Amendment malicious prosecution claim. I would instead follow the majority’s reasoning in upholding the grant of summary judgment to Carroll on the malicious prosecution claim. Like Carroll, Katz did not testify at the preliminary hearing, nor was any conclusion by Katz concerning the examination of the hairs from the pantyhose brought to the attention of the court at the preliminary hearing. Given that probable cause had already been established, I do not find any authority for the proposition that after probable cause has been established a witness who knows of likely exculpatory evidence is violating the Fourth Amendment unless the witness quickly reveals that evidence to the court. Apart from the problems associated with how to determine the effect of Katz’s information upon the court’s previous finding of probable cause, the reasoning of the majority would create numerous practical problems since investigations often turn up a pletho *762 ra of facts supporting either side’s case. In effect, the duty outlined by the majority would create a requirement that a court perpetually reexamine its probable cause determination in light of each new piece of evidence collected, as any piece of evidence could theoretically affect that determination. Moreover, in articulating this proposition, the majority only relies upon two lone concurrences from the Supreme Court, see Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (Ginsburg, J., concurring and Souter, J., concurring), and a prior decision of this court involving the fabrication of probable cause by a police officer, see Spurlock v. Satterfield, 167 F.3d 995, 1006-07 (6th Cir.1999). Neither of these decisions compels the majority’s result. In the end, we do not know what effect Katz’s analysis would have had upon the continuing detention of Gregory, as the court had already found probable cause. Perhaps in the long run it matters very little, for the Brady issue is still pending against Katz and it seems an adequate vehicle through which to address any concerns about the withholding of exculpatory evidence. In closing, I would not find it to be a Fourth Amendment violation solely for Katz’s failure to provide this information after the court had found probable cause without any input from her.
I also dissent from the majority’s conclusion that the district court erred in dismissing the Fourth Amendment malicious prosecution claim against Clark. I agree with the district court that there was probable cause to arrest and detain Gregory. The victim had sought out an arrest warrant for Gregory and "had, on two separate occasions, identified Gregory in person, although both of these identifications appear to be suspect. The question of probable cause is not proof beyond a reasonable doubt. See United States v. Strickland, 144 F.3d 412, 416 (6th Cir.1998). Here, Clark testified truthfully at the hearing[1] and, although he did not mention that the victim had picked another picture out of a photo line-up, he did testify that the victim had been unable to identify Gregory in that photo line-up. Given this, I would not find that a Fourth Amendment violation occurred when Clark testified in the preliminary hearing. See Darrah v. City of Oak Park, 255 F.3d 301, 312-13 (6th Cir.2001); see also Ahlers v. Schebil, 188 F.3d 365, 370 (6th Cir.1999) (noting that eyewitness identifications are “generally entitled to a presumption of reliability and veracity”). Although he may have had some information which was exculpatory, that is, that the complainant picked out another photograph at the first identification, he was not asked about it, and he did not lie to the court. I do not think that there is authority for the proposition that witnesses, in this context, are under an absolute duty to inform the court of any and all potential exculpatory information. Cf. Mays v. City of Dayton, 134 F.3d 809, 816 (6th Cir.1998) (“Because the consequences of arrest or search are less severe and easier to remedy than the consequences of an adverse criminal verdict, a duty to disclose potentially exculpatory information appropriate in the setting of a trial to protect the due process rights of the accused is less compelling in the context of an application for a warrant.”).[2] However, *763 I do agree with the majority in its conclusion that the allegedly false investigative notes do not establish a Fourth Amendment injury, because the notes are inculpatory evidence only.
Finally, on the question of municipal liability, I agree with the majority that, under Russo v. City of Cincinnati, 953 F.2d 1036, 1046-47 (6th Cir.1992), Gregory has presented sufficient evidence to state a claim against the City for a policy of inadequate training or supervision regarding police officers’ duty to disclose exculpatory material. However, I think that Gregory’s municipal liability claim alleging that the City had a custom of using overly suggestive show-ups is not a viable claim. In order to state a viable custom claim, a plaintiff must show, among other things, a “clear and persistent pattern of illegal activity” and “the defendant’s tacit approval of the unconstitutional conduct.” Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir.2005) (alterations and citations omitted) (emphasis added). Here, Gregory has shown a clear and persistent pattern of one-on-one show-ups that the City tacitly approved. However, he has not shown that these show-ups were either illegal or unconstitutional. The Supreme Court has said that the use of one-on-one identification procedures is not always unconstitutional and must be considered on a case-by-case basis. See Neil v. Biggers, 409 U.S. 188, 196-97, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Although the show-up conducted in this case may have been unconstitutional, a plaintiff “cannot rely solely on a single instance” to prove the existence of an unconstitutional custom. See Thomas, 398 F.3d at 433. In the end, Gregory has failed to put forward facts indicating that the City had a custom of conducting unconstitutional show-ups and has therefore failed to prove a necessary element of his custom claim.
Therefore, for all these reasons stated, I would uphold the district court in all of its rulings, except for the one ruling dismissing the City of Louisville on the policy of inadequate training or supervision concerning the disclosure of exculpatory information,

. Despite the majorily’s conclusion that Clark potentially made a material misrepresentation to the court by saying that the victim’s description of her assailant fit Gregory, Clark’s testimony appears reasonable especially given the broad description of the assailant tendered by the victim.

. The Mays court went on to note:
To interweave the Brady due process rationale into warrant application proceedings and to require that all potentially exculpatory evidence be included in an affidavit, places an extraordinary burden on law enforcement officers, compelling them to fol *763 low up and include in a warrant affidavit every hunch and detail of an investigation in the futile attempt to prove the negative proposition that no potentially exculpatory evidence had been excluded. Under such a scenario, every search would result in a swearing contest with participants arguing after the fact over whether exculpatory evidence even existed.
For these reasons, as well as to resolve any confusion resulting from prior opinions, we reiterate that except in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, Franks [v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)] is inapplicable to the omission of disputed facts.
134 F.3d at 816 (emphasis in original).