**NOT RECOMMENDED FOR PUBLICATION**
File Name: 06a0373n.06
Filed: May 26, 2006

**Nos. 04-4253, 04-4367**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JERRY L. DOYLE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| CHARLES W. MCFADDEN, et al. | ) | OHIO |
| | ) | |
| Defendants-Appellees. | ) | |

Before: MARTIN, SILER, and CLAY, Circuit Judges.

**SILER**, Circuit Judge. Plaintiff Jerry Doyle filed suit against the City of Columbus ("City")

and Columbus Police Officer Charles W. McFadden alleging 42 U.S.C. § 1983 claims under the

First and Fourth Amendment and various state law claims. The district court granted summary

judgment to the defendants on the constitutional claims and, given the disposition of the federal

claims, declined to exercise supplemental jurisdiction over the state law claims. Doyle alleges

numerous errors of law and fact in the proceedings below. For the following reasons, we AFFIRM.

**BACKGROUND**

In 1998, Doyle attended a meeting of the Columbus Board of Education ("Board") in which

the renewal of the contract of Benjamin Pittman, the school Treasurer, was a major issue. During

the meeting, Doyle was given an opportunity to address the Board and he stated that he would "be

there all night" should the Board decline to renew Pittman's contract. Along with this comment,

Doyle referenced a pillow and blanket that he had brought to the meeting to underscore his point. Ultimately, the Board declined to renew Pittman's contract and the meeting ended at 5:03 p.m.

After the meeting concluded, many individuals who attended the meeting, including Doyle, remained in the Board room discussing various school-related topics. At approximately 5:15 p.m., Officer McFadden, a police officer for the City who also works as a special duty officer at meetings of the Board, instructed everyone, including Doyle, to leave the Board room. Those present, Doyle included, moved to an area in the hallway outside of the Board room and continued to discuss Board matters. Doyle contends that citizens often congregate in the hallway after Board meetings for the purpose of discussing Board matters. At 5:30 p.m., Officer McFadden again requested that Doyle vacate the premises. At 6:20 p.m., Officer McFadden again requested that Doyle vacate the premises, stating that the building was closing so that custodial staff could enter the premises to clean. Doyle refused to vacate the building. Officer McFadden then arrested Doyle at 6:25 p.m. for criminal trespass. McFadden presents evidence, that Doyle does not appear to dispute, that sometime after the close of the meeting and before Doyle's arrest, Moses Hubert, who was in charge of security for the Board, "advised Officer McFadden to close the building, as it was necessary for the custodial staff to come in to clean the building."

Doyle was tried and acquitted of a violation of the city's criminal trespass ordinance. He then commenced this action against Officer McFadden and the City alleging the violation of various rights. Doyle voluntarily dismissed the majority of his claims, but maintained his First Amendment, Fourth Amendment, and various state law claims. The district court granted summary judgment

to the defendants on Doyle's constitutional claims and, given the disposition of the federal claims,

declined to exercise supplemental jurisdiction over the state law claims.

## DISCUSSION

We review a district court's grant of summary judgment *de novo*. *Minadeo v. ICI Paints*,

398 F.3d 751, 756 (6th Cir. 2005).

## A. Free Speech Claim

Doyle first appeals the district court's grant of summary judgment to McFadden on Doyle's

§ 1983 claim alleging violation of his First Amendment right to freedom of speech. Doyle argues:

(1) he had a right to lawfully express his views inside the Board building because the building was

a public forum; and (2) his exercise of free speech was a motivating factor behind Officer

McFadden's decision to arrest him.

## 1. Public Forum

In discussing the ability of government to regulate speech on public property, the Supreme

Court has differentiated between different types of public property. *See Perry Educ. Ass'n v. Perry*

*Local Educators' Ass'n*, 460 U.S. 37, 45-46 (1983). The ability of the government to limit

expressive activity is most circumscribed in "places which by long tradition or by government fiat

have been devoted to assembly and debate"; these are labeled "quintessential public forums." *Id.*

at 45.

Even assuming, without deciding, that the hallway in which Doyle was arrested constituted

a quintessential public forum, the government is still able to place reasonable time, place, and

manner restrictions upon the use of this facility as long as these restrictions are content-neutral,

narrowly tailored, and leave open ample alternative channels of communication. *See id.* Closing a government building after business hours and after all matters of public concern have ended in order to allow the custodial staff to clean the building is, on its face, a reasonable restriction. Recognizing this, Doyle argues that this particular closure was unreasonable since the building did not typically close until "approximately 7:30 p.m. or 8:30 p.m. or 9:00 p.m." and other members of the public were in the building at the time of his arrest. However, he offers no evidence of the normal closing time except for this vague statement of his expectation of the closing time. Moreover, his second allegation, that "other members of the public remained in the building," is only supported by a statement in Doyle's affidavit to that effect; no other details are provided. In the end, Doyle has failed to "come forward with facts demonstrating there is a genuine issue of material fact for trial" on this issue. *Cohn v. Nat'l Bd. of Trial Advocacy*, 238 F.3d 702, 704 (6th Cir. 2000) (citations omitted).

**2. Speech as Motivating Factor in the Arrest**

Secondly, Doyle claims that his exercise of speech was a motivating factor behind Officer McFadden's decision to arrest him. In support of this claim, Doyle cites *Greene v. Barber*, 310 F.3d 889 (6th Cir. 2002), and *McCurdy v. Montgomery County*, 240 F.3d 512 (6th Cir. 2001). In *Greene*, the plaintiff made a minimal showing that the arrest was the product of an improper motive. 310 F.3d at 896-97. The *McCurdy* court remanded the case, as the district court had failed to inquire about whether speech was a motivating factor in the arrest. 240 F.3d at 520.

Here, Doyle presents almost no evidence supporting his claim that speech was a motivating factor in the arrest. He simply claims that "there clearly are fact issues as to whether the officer

would have made the arrest in the absence of constitutionally protected speech." Due to this lack of evidence concerning Officer's McFadden's motivations for the arrest, he has failed create a genuine issue of material fact. *See Cohn*, 238 F.3d at 704.

**B. Malicious Prosecution Claim**

While the exact contours of a Fourth Amendment malicious prosecution claim under § 1983 are unclear, we have previously recognized that such a claim exists. *See Darrah v. City of Oak Park*, 255 F.3d 301, 308-10 (6th Cir. 2001). Without explicating the exact requirements for a malicious prosecution claim, we have stated that a plaintiff must be able to show "an unreasonable search and seizure under the Fourth Amendment, *i.e.*, that there was no probable cause to justify her arrest and prosecution." *Id.* at 312 (citation omitted).

The undisputed facts show that, during the Board meeting, Doyle had announced that he "would be there all night if Mr. Pittman's contract was not renewed" and referenced a pillow and blanket he had brought along with him. The Board meeting ended at 5:03 p.m. and Mr. Pittman's contract was in fact not renewed. Pursuant to instructions from Hubert, who was in charge of security for the Board, Officer McFadden was instructed to clear the building in order to allow custodial staff to begin their work. Over the next 90 minutes or so, Officer McFadden instructed Doyle to leave the premises at least two times and possibly three. In the last request, Officer McFadden instructed Doyle to leave the building because it was closing. Doyle refused to leave the facility and was arrested for criminal trespass in violation of Columbus City Code § 2311.21.

Given the facts known to Officer McFadden at the time, he could have reasonably believed that Doyle was committing a criminal trespass in that Doyle was on another's premises and was

refusing to vacate those premises upon request of an agent of the Board. *See* Columbus City Code § 2311.21. Accordingly, Doyle has failed to prove a necessary component of a malicious prosecution claim.

## C. Claims Against the City

As the district court noted, Doyle's claims, if any, against the City are unclear since he voluntarily dismissed many of these claims in his amended complaint. To the extent Doyle asserts a § 1983 claim against the City, the district court held that Doyle had failed to carry his burden of proof since he referred only to Officer McFadden's behavior and presented no evidence that the City was in any way responsible for these alleged constitutional violations. Since *respondeat superior* is not applicable and a municipality cannot be held liable under § 1983 without a policy- or custom-type argument, the district court properly dismissed any claims that remained. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

## D. State Law Claims

Given our finding that the district court properly granted the defendants summary judgment on all of Doyle's federal claims, the district court's decision not to exercise supplemental jurisdiction over Doyle's state law claims was appropriate. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

AFFIRMED.