File Name: 09a0039n.06

Filed: January 16, 2009

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 08-1035

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

WILLIAM FLOWERS,

    *Plaintiff-Appellant*,

v.

CITY OF DETROIT, LANCE
NEWMAN, JAMES FISHER,
ANTHONY JACKSON, KURTISS
STAPLES, AND OTHER UNKNOWN
OFFICERS*,* in individual and
official capacities,

    *Defendants-Appellees*.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

_____/

Before:     MARTIN, and COOK, Circuit Judges, and WATSON, District Judge.[*]

    BOYCE F. MARTIN, JR., Circuit Judge. Plaintiff William Flowers was arrested and charged with the murder of an acquaintance, John Smiley. These charges were dismissed, and Flowers sued the City of Detroit, four of its police officers, and other unknown officers alleging false arrest and false imprisonment, malicious prosecution, gross negligence, abuse of process, and violations of the Fourth Amendment. The district court granted summary judgment in

_____

    [*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

Defendants' favor, finding that Flowers was precluded from arguing lack of probable cause for his arrest—an element of each of his claims—by collateral estoppel arising from a state court judgment on the issue of probable cause. We find no error in the well-reasoned judgment of the district court, and therefore AFFIRM.

I.

On April 20, 2004, Detroit police officers responded to a report of a shooting. Upon arrival, they discovered that someone had killed John Smiley by shooting him in the head. Defendants Newman, Staples, Fisher, and Jackson were the City of Detroit homicide detectives responsible for investigating Smiley's death.

Later that day, investigators spoke to Loreen Rounds who was visiting Smiley's apartment when he was shot. In her written statement, Rounds gave investigators a false name; she later explained she did this because she had outstanding warrants. She reported that Smiley had let two men into the apartment, one whom she recognized as "Steve," and another whose face she did not see and could not identify. She said that shortly after Smiley and the two men walked into a back bedroom, she heard a bang. Then, Steve and the other man emerged from the bedroom, threatened her, forced her at gunpoint into a bedroom, and then stole items from the apartment and left. Rounds also said that Flowers had spent the previous night in the apartment but had left around 7:30 or 8:00 a.m. to go to work.

The next day, investigators visited Flowers at work and asked him (or, according to Flowers, "ordered him") to go with them to the police station to assist in the murder investigation. Flowers

told the officers that he was at home with his fiancée, Sharon Jackson, at the time of the murder. He said that he and Jackson had been at Smiley's apartment playing cards with Rounds and Smiley the night before the murder and that he had spent the night there. According to Flowers, Jackson had picked him up early the next morning to take him to work and that was the last time he had seen Smiley.

On April 22, a second investigator interviewed Rounds, and she gave a second written statement. Rounds revealed that her earlier statement was not truthful because, in addition to giving a false name, she had lied about not being able to identify the second man involved—she had known all along it was Flowers. Rounds explained that she did not reveal Flowers' identity in her first written statement because, immediately after the murder, he had threatened to kill her if she did not keep quiet.

Later that day, Flowers learned from Jackson's son that police had surrounded their home. Flowers and Jackson went to the police station where Flowers was arrested. According to Flowers, Jackson was willing to provide a statement corroborating Flowers' account that he was at home with her at the time of the murder, but the investigators did not get a written statement from Jackson. A formal warrant was obtained two days later, on April 24, charging Flowers with first degree murder, felony murder, felon-in-possession of a firearm, and as a habitual offender under Michigan's statute for possession of a firearm during commission of a felony. The warrant request was based on Rounds' second written statement. It did not mention Rounds' previous statement, nor Jackson's offer to give a statement that she was with Flowers at the time of the murder.

On May 14 a state judge presided over Flowers' preliminary examination. At the hearing,

Rounds and Officer Newman, the investigator who had submitted the warrant request, testified. After the county prosecutor ended his direct examination of each witness, the judge gave Flowers' criminal defense attorney an opportunity to cross-examine the witnesses, which he declined. Once the testimony concluded, the court heard arguments from the prosecution and defense counsel. The court dropped the weapons charges, but found probable cause on the murder charges and bound Flowers over for trial. The trial was supposed to begin on August 16, but Rounds, the prosecution's only witness, failed to appear and the court dismissed the murder charges.

Flowers filed a complaint in state court under 42 U.S.C. § 1983 against the City of Detroit, four named police officers, and other unknown officers alleging: false arrest and false imprisonment (Count I), malicious prosecution (Count II), gross negligence (Count III), abuse of process (Count IV), warrantless search and seizure without probable cause in violation of the Fourth Amendment (Count V), malicious prosecution in violation of the Fourth Amendment (Count VI), and deliberate indifference by the City of Detroit (Count VII). The Defendants removed the case to federal court where the district court granted their motion for summary judgment on the ground that issue preclusion barred Flowers from relitigating the existence of probable cause. Flowers appeals.

II.

This Court reviews de novo a district court's decision to grant summary judgment. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005).

III.

We apply state law to determine whether Flowers, in this Section 1983 action, is precluded

from challenging the state court's determination of probable cause at a preliminary examination

hearing. *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *Haring v. Prosise*,

462 U.S. 306, 313 (1983)). Under Michigan law, a party is precluded from re-litigating an issue

when:

> 1) there is identity of parties across the proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated and necessarily determined in the first proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Id.* (citing *People v. Gates*, 452 N.W.2d 627, 630-31 (Mich. 1990)).

Here, Flowers concedes that the first two elements are satisfied (same parties, final judgment)

but argues that his Section 1983 action is not the "same issue" as was litigated at the preliminary

hearing, and that he was not given a full and fair opportunity to litigate probable cause.

*A. Same Issue Litigated*

Flowers argues that his claim focuses not on whether probable cause existed, but on whether

Defendants attempted to "frame" him by "misstat[ing] the facts and deliberately omitt[ing]

exculpatory evidence from the warrant request; thus, creating a false and incomplete version of the

facts in order to establish probable cause."

*Darrah v. City of Oak Park* held that a state court determination of probable cause did not

preclude a subsequent malicious prosecution claim where the plaintiff alleged that "the defendant-

officers had knowingly supplied the magistrate with false information in order to establish probable

cause." 255 F.3d at 311. Later in *Hinchman v. Moore*, 312 F.3d 198, 202 (6th Cir. 2002), we

applied *Darrah* to allow a plaintiff's claim to proceed where she alleged that detectives supplied the

state court with "a false version of the facts." And more recently, in *Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007), we observed that the exception to the usual preclusive effect of a state court probable cause determination applies when there is evidence of a "police officer's supplying false information to establish probable cause."

Flowers contends that Defendants' failure to state in the warrant request that Rounds had made a previous statement (which included giving a false name and lying about her ability to identify Flowers) created a false impression as to Rounds' credibility. But as the district court observed, Rounds' previous statement, drug use, and changed story were all brought to light at the preliminary examination. An imperfect witness is not the same thing as a "false" witness. Apart from the challenge to how the Defendants portrayed Rounds, Flowers offers no evidence upon which a reasonable jury could conclude that they deliberately provided the judge with false information. Though Flowers characterizes the Defendants' actions as "false," the warrant request and transcript of the preliminary examination does not support this accusation.

Flowers also argues that investigators left out evidence "that was so clearly exculpatory [as] to make the information provided to the judge false and incomplete." Most troubling to Flowers is the omission from the warrant request of any reference to Jackson's willingness to give a statement that he was with her at the time of the murder. He also maintains that the investigators should have included a witness' account that she saw two men leaving in a light blue truck. But neither *Darrah* nor any of the cases to apply it held that the exception to issue preclusion applies by virtue of a lack of detail in a warrant request. To the contrary, this Court has held that "precision" in warrant requests "where there is probable cause to justify an arrest, is not a constitutional requirement."

*Peet*, 502 F.3d at 565 n.2. Although in determining probable cause police officers may not "simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone," *Ahlers v. Schebil*, 188 F.3d 365, 371-72 (6th Cir. 1999), leaving out of a warrant request the fact that the accused's fiancée is willing to offer an alibi does not otherwise negate probable cause. *See Coogan v. Wixon*, 820 F.2d 170, 173 (6th Cir. 1987)*, overruled on other grounds*, *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001). And Defendant Newman testified that he delivered the entire homicide file along with the warrant request to the prosecutor for his review. Although in some cases material omissions from a warrant request may be so egregious as to make it "false" for purposes of establishing probable cause, the evidence here, even considered in the light most favorable to Flowers, does not support such a finding.

Thus, despite Flowers' characterization of Defendants' conduct as "false," Flowers failed to offer facts that demonstrate that this case fits within the *Darrah* exception for claims supported by evidence of false information.

*B. Full and Fair Opportunity*

Moreover not every preliminary examination determination will preclude a subsequent Section 1983 action. *Coogan*, 820 F.2d at 175. If the preliminary examination is "little more than a formalit[y]" or where "strategic concerns" prevent the exercise of fully adversarial proceeding, the state determination should not be given preclusive effect. *Id.* But on the other hand, "where the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does do, the finding of probable cause . . . should foreclose relitigation of that finding in a

subsequent § 1983 action." *Id.*

A review of the transcript of the preliminary examination hearing demonstrates that it was not a "formality." Indeed, the court gave Flowers' defense counsel the opportunity to cross-examine the witnesses. Although he declined, he was not deprived of a "fair opportunity" to do so. Moreover, Flowers' counsel successfully challenged the weapons charge during the oral argument that followed the witnesses' testimony. That the judge "cut off" the prosecutor's line of questioning regarding Rounds' first written statement does not mean that counsel was deprived of a fair opportunity to litigate probable cause; the transcript reveals that it was actually Flowers' counsel who objected on "foundation" grounds to the line of questioning. Thus, the district court properly concluded that Flowers was afforded and full and fair opportunity to litigate the existence of probable cause at his preliminary examination hearing.

IV.

The district court correctly determined that the preliminary examination hearing featured the same parties, a valid final judgment, the same issue at the center of litigation, and a full and fair opportunity for Flowers to litigate the issue. Flowers is therefore barred in his Section 1983 claim from relitigating the existence of probable cause and we AFFIRM the district court's judgment.